ORIGINAL

FILED
OCT 2 4 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARKWOOD ASSOCIATES LIMITED PARTNERSHIP, a Washington limited partnership;

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

No. 07-742 C
(Judge ___________)

**COMPLAINT FOR BREACH OF CONTRACT AND JUST COMPENSATION**

COMES NOW plaintiff Parkwood Associates Limited Partnership ("Plaintiff"), by and through undersigned counsel, and for its Complaint against the defendant United States of America ("Defendant"), state and allege as follows:

**PARTIES**

1. Plaintiff is the owner of an apartment complex in Burlington, Washington known as the Parkwood Apartments ("Parkwood").

2. The Defendant is the United States of America, through its executive agency the United States Department of Agriculture, Rural Housing Service ("RHS").

**JURISDICTION**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 1491.

**GENERAL ALLEGATIONS**

4. On or about March 22, 1978, Plaintiff entered into a loan contract with the Defendant, which contract Defendant was authorized to enter into pursuant to Section 515 of the

Housing Act of 1949 (the "515 Program"). The loan documents executed by Plaintiff and Defendant included a loan agreement, a promissory note, and a deed of trust. The Defendant recorded the deed of trust against Parkwood to secure payment of the promissory note. A true and correct copy of the promissory note is attached to this Complaint as Exhibit A. A true and correct copy of the deed of trust is attached to this Complaint as Exhibit B.

5. While the Parkwood loan was amortized over fifty (50) years, the promissory note gave Plaintiff the unfettered right to prepay the loan at any time. The promissory note expressly provides: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower."

6. Upon pay off of the loan, the Defendant was obligated to issue a deed of reconveyance that released the Defendant's lien recorded against the Parkwood property. The deed of trust expressly provides:

> Upon full and final payment of all indebtedness hereby secured and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, the Government shall request trustee to execute and deliver to Borrower at his above post office address a deed of reconveyance of the property within 60 days after written demand by Borrower, and Borrower hereby waives the benefits of all laws requiring earlier execution or delivery of such deed of reconveyance.

7. Prepayment was a critical component to Plaintiff's 515 loan contract, as the economic incentives of the 515 Program only provided economic benefits for approximately 15 years, and sometimes less. Prepayment also allowed Defendant to free itself from a cap on its annual returns, which was limited to a maximum annual return not to exceed 8% of Plaintiff's initial investment.

8. Prepayment also furthered the Defendant's objectives. The Defendant's long-term goal was to promote the construction of multi-family housing projects in rural areas that were not regulated by the Defendant. The Defendant sought to achieve this goal by encouraging 515 borrowers to prepay their loans and revert to conventional financing as soon as practical. The Defendant's standard promissory note executed by Plaintiff provides:

> REFINANCING AGREEMENT: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full . . . .

The Defendant's marketing materials for the 515 Program that were published in October 1977 similarly provided:

> When the financial position of the borrower reaches the point that he can repay or refinance through a commercial lender, the loan contract provides that he shall do so.

A true and correct copy of the Defendant's October 1977 marketing brochure is attached hereto as Exhibit C.

9. Prepayment also fostered the development of multi-family housing in rural areas by circulating the pool of funds available to finance such projects. In other words, a project owner who initially built his project with the Defendant's funds was encouraged to prepay as soon as practical so that the Defendant could re-lend its funds for further development of rural housing for elderly and low-income individuals.

10. In 1987, the Defendant was concerned about a dwindling supply of low and moderate-income housing. H.R. Rep. No. 100-122, p. 53 (1987). Responsive to that concern, the Defendant enacted the Emergency Low Income Housing Preservation Act

("ELIHPA") in 1988 to impose retroactive permanent restrictions upon prepayment of Section 515 loans entered into before December 21, 1979. Pub. L. No. 100-242, 101 Stat. 1877, codified at 42 U.S.C. Section 1472(c).

11. The Defendant enacted ELIHPA for the specific purpose of modifying the prepayment right found in the promissory note attached hereto as Exhibit A.

12. ELIHPA, and its implementing regulations previously found at 7 C.F.R. 1965, Subpart E and now found at 7 C.F.R. 3560, Subpart N (which the Defendant refers to as its "Prepayment Prevention Program"), undertake to abrogate the Defendant's prior express contractual promise that gave 515 borrowers like Plaintiff the unfettered right to prepay their 515 loans. These unilateral restrictions prevent prepayment of a loan unless a 515 property owner first satisfies many complex, time-consuming, and expensive requirements that can result in a forced sale of the property for than less than fair market value:

(a) First, the owners must make what the Defendant deems to be "reasonable efforts" to enter into new agreements with FmHA to extend the original use restriction periods of their housing units for up to another 20-year period, beginning on the dates in which such agreements are reached, even though the owners may not want to participate for another 20 years. *See* 42 U.S.C. Section 1472(c)(4)(A).

(b) The Prepayment Prevention Program authorizes the Defendant to offer limited, so-called "incentives" to owners; for example, additional rental assistance, an increase in the return to owners, and equity loans. 42 U.S.C. Section 1472(c)(4)(B). These incentives are subject to the availability of government funding. *See* 47 U.S.C. Section 1472(c)(4)(B). The funding available for incentives has been woefully inadequate since the inception of the program, often leading to five or six-year waiting lists for incentives.

(c) The Prepayment Prevention Program further requires owners in some circumstances -- if they are unwilling to accept the Defendant's so-called "incentives" and tie up their properties for another 20 years -- to offer to sell their properties to any qualified nonprofit organization or public agency. *See* 42 U.S.C. Section 1472(c)(5)(A), 7 C.F.R. 1965.216, and 7 C.F.R. 3560.658(b)(1). Such offer is required to be made at the Defendant's definition of "fair market value" as determined by appraisal procedures established by the government. *See* 7 C.F.R. 1965.216(a) and 7 C.F.R. 3560.659(a). This procedure requires owners seeking to exercise their contractual prepayment termination rights to run the risk that their property may very well be purchased by a nonprofit corporation or public agency at a depressed price determined by the Defendant's artificial valuation process, thus losing both their property and receiving less than fair market value.

(d) The Prepayment Prevention Program allows owners in other circumstances -- if they are unwilling to accept the Defendant's so-called "incentives" and tie up their properties for another 20 years -- to prepay their 515 loans, but only if the owner agrees to lease its apartment units to the existing low and moderate-income tenants for drastically reduced rental rates without rent subsidies for the remainder of those tenants lives or until they move out of the apartment complex, whichever occurs first. 42 U.S.C. Section 1472(c)(5)(G)(ii)(I), 7 C.F.R. 1965.215(c)(1)(ii), and 7 C.F.R. 3560.658(b)(2).

13. Prior to the enactment of ELIHPA, 515 borrowers could prepay their loans at any time and thereby exit the 515 Program, including its cap on annual returns, without any restrictions.

14. On or about May 29, 2003, Plaintiff attempted to mitigate its damages by filing an application to prepay its 515 loan contract. Such application was submitted in compliance with the Defendant's unilaterally imposed Prepayment Prevention Program.

15. After the Defendant processed Plaintiff's regulatory prepayment application and failed to obtain the money needed to fund the "incentive offer" Defendant made to Plaintiff, the Defendant notified Plaintiff that Plaintiff could prepay its 515 loan, but failed to explain that Defendant would unilaterally impose certain restrictions as a condition of prepayment. The restriction that Defendant is now unilaterally attempting to enforce against Plaintiff is a requirement that Plaintiff lease its apartment units to the tenants who occupied the property at the time of prepayment at drastically reduced rental rates without the benefit of any rent subsidies for the remainder of those tenants' lives or until they voluntarily move from the property, whichever occurs first.

16. On December 11, 2006, Plaintiff tendered $277,164.64 to Defendant, which the Defendant subsequently accepted, to fully pay off the promissory note attached hereto as Exhibit B.

17. On December 26, 2006, the Defendant issued a conditional deed of reconveyance that contained a deed restriction that requires Plaintiff, and any successor in interest, to operate Parkwood in compliance with the restrictions of the 515 Program until the last existing tenant (that occupied the property on the date of prepayment) voluntarily vacates. A true and correct copy of this conditional deed of reconveyance is attached hereto as Exhibit D.

18. Effective December 11, 2003, the Defendant terminated its rent subsidy contract with Plaintiff. As a result of the Defendant terminating all subsidies and as a result of the Defendant's unilateral restriction that requires Plaintiff to operate Parkwood in compliance

with the restrictions of the 515 Program until the last existing tenant (that occupied the property on the date of prepayment) voluntarily vacates the property, the Plaintiff has been required to lease some of the Parkwood apartment units at rent levels that are drastically below market rent levels without the benefit of any subsidies. Plaintiff would have received much higher rents for those units had Defendant allowed Plaintiff to prepay at any time without any restriction, as plaintiff's loan contract expressly allowed Plaintiff to do.

**DAMAGES**

19. As a direct and proximate result of Defendant's refusal to allow Plaintiff to prepay its 515 loan at any time without restrictions, Plaintiff has been damaged in the following ways: (1) Defendant has hindered and delayed Plaintiff's ability to convert Parkwood to a more profitable use; (2) Defendant has prolonged Plaintiff's tenure in Defendant's 515 Program which has caused deterioration to Plaintiff's property that otherwise would not have occurred had Plaintiff been allowed to prepay its 515 loan contract at any time; and (3) the Defendant has hindered Plaintiff's ability to obtain favorable financing to tap its substantial equity in the property and put such equity to higher and better uses. Plaintiff reserves the right to supplement its prayer for damages as discovery progresses in this action.

**COUNT ONE**
(Breach of Contract)

20. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

21. Defendant's refusal to allow Plaintiff to prepay its loan obligation at any time without restrictions constitutes a material breach of contract. Further, the Defendant's

requirement that Plaintiff continue to operate Parkwood pursuant to the restrictions of the 515 Program, without any rent subsidies, constitutes a continuing breach of contract.

22. As a direct and proximate result of Defendant's material breach, Plaintiff has been damaged in an amount to be proven at trial.

**COUNT TWO**
**(Takings - Just Compensation)**

23. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

24. The Defendant's refusal to allow Plaintiff to prepay its 515 loan at any time without any restrictions constitutes a taking of Plaintiff's property for public use and requires payment to Plaintiff of just compensation under the Fifth Amendment to the United States Constitution. Further, the Defendant's requirement that Plaintiff continue to operate Parkwood pursuant to the restrictions of the 515 Program, without any rent subsidies, constitutes a continuing taking without just compensation in violation of the Fifth Amendment to the United States Constitution.

25. Plaintiff is entitled to just compensation for the taking of it's property in an amount which will be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. As to Count One, that the Court award Plaintiff monetary relief for the damages suffered to date and for the damages Plaintiff continues to suffer as described more fully above resulting from Defendant's breach of contract, in an amount to be determined at trial.

2. As to Count Two, that the Court award Plaintiff just compensation for the period during which Plaintiff's property has been improperly taken for public use by Defendant, in an amount to be determined at trial.

3. As to all Counts, that the Court award Plaintiff its attorneys' fees and reasonable expenses as allowed pursuant to the Equal Access to Justice Act, 28 U.S.C. Section 2412 et seq., the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. Section 4654(c), and any and all other applicable provisions.

4. As to all Counts, that the Court award Plaintiff its costs and interest as allowed by law.

5. As to all Counts, that the Court grant such other and further relief as the law and the evidence may justify and as the Court may deem just and proper.

Respectfully submitted this 23rd day of October, 2007.

By____________________

C. Clayton Gill
Attorneys for Plaintiff
MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
ccg@moffatt.com
23-247