IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARKWOOD ASSOCIATES LIMITED PARTNERSHIP, a Washington limited partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-742C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant respectfully requests the Court to grant summary judgment in favor of the Government. The grounds for this motion are that there are no genuine issues of material fact and that defendant is entitled to dismissal of this action as a matter of law, because the action is time-barred and because Count Two of the complaint fails to state a claim upon which relief can be granted. In support of our motion, we rely upon the pleadings, the following brief, the attached appendix, and the separately filed proposed findings of uncontroverted fact.[1]

DEFENDANT'S BRIEF

Issues Presented

1. Whether the Court lacks jurisdiction because the claims asserted in this case accrued by February 3, 1993, after plaintiff, Parkwood Associates Limited Partnership ("Parkwood"), sought to prepay the loan in question by that date and was not permitted to do so.

2. Assuming that the Court possesses jurisdiction to entertain this action, whether the complaint states a cause of action for a taking of plaintiff's property without just compensation.

[1] "App. ___" refers to the appendix to this motion.

Statement Of The Case

Parkwood alleges that it is a property owner who entered into a loan contract with the Government pursuant to section 515 of the Housing Act of 1949, 42 U.S.C. § 1485. Complaint ¶¶ 1, 4. Parkwood alleges that the Government breached this contract, or effected a taking of Parkwood's property without just compensation, through the implementation of the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), and its implementing regulations. Complaint ¶¶ 10-24.

Specifically, Parkwood alleges that the promissory note reflecting the loan provided Parkwood with the option of prepaying its loan, and thereby discontinuing the restrictions associated with the Section 515 program. Complaint ¶¶ 5-7. Parkwood complains that ELIHPA amended the Housing Act of 1949 to place restrictions upon the prepayment options available to housing project owners such as Parkwood, Complaint ¶¶ 10-13; that, pursuant to these restrictions, the Government refused to allow Parkwood to prepay its loan without restrictions, Complaint ¶¶ 14-19; and that "Defendant's refusal to allow Plaintiff to prepay its loan obligation at any tine without restrictions constitutes a material breach of contract," Complaint ¶ 21, as well as a "taking of Plaintiff's property for public use [requiring] payment to Plaintiff of just compensation . . . ." Complaint ¶ 24.

Parkwood's account of the Government's refusal to allow prepayment without restrictions, as set forth in the complaint, focuses upon an application to prepay submitted in 2003, Complaint ¶ 14, and the Government's actions in response to that application. Complaint ¶¶ 15-18. Omitted from the complaint is the fact that Parkwood had also submitted a prepayment application in 1992, and that the Government did not allow prepayment in response to this application either. Thus, if a failure to allow Parkwood to prepay its loan without

restrictions constituted a breach of contract or a taking, then the breach or taking occurred well in excess of six years before the complaint was filed. This action, therefore, is time-barred.

Finally, Count Two of the complaint should be dismissed because, as this Court has previously held in cases raising claims virtually identical to those asserted here, the remedy for the Government's refusal to accept prepayment of an FmHA loan and release the borrower from the loan program is an action for breach of contract; a separate cause of action for a taking of property without just compensation is not available in such cases.

STATEMENT OF FACTS

By letter dated August 3, 1992, Parkwood submitted to the Farmers Home Administration, United States Department of Agriculture ("FmHA"), a request to prepay the March 22, 1978 loan referenced in paragraph 4 of the complaint. The letter stated that Parkwood wished to prepay the loan on February 3, 1993. The letter noted that a complete prepayment request was enclosed "[a]s set forth in FmHA Instruction 1965-B, Exhibit E, 'Prepayment Request of Rural Housing Loans,' which allows prepayment of loans obligated prior to December 21, 1997, which are not subject to restrictive use provision . . . ." App. 1, 4.

Initially, FmHA believed the request could not be processed, because Parkwood's files were impounded due to an investigation by the USDA Office of Inspector General ("OIG"). By letter of August 27, 1992, however, the OIG advised Parkwood's attorney of OIG's having informed FmHA that the pertinent files in OIG's possession remained available for FmHA's routine administrative needs. App. 1-2, 24.

By letter of September 2, 1992, Parkwood resubmitted its August 3, 1992 prepayment package. App. 2, 26. However, the Government took no action in response to Parkwood's 1992 prepayment request. App. 2.

The Government did not allow Parkwood to prepay its loan without restrictions, either in response to Parkwood's 1992 prepayment request or in response to any subsequent prepayment request. Complaint ¶¶ 19, 21, 24.

ARGUMENT

I. This Action Is Barred By The Statute Of Limitations

One of the jurisdictional prerequisites for suit in this Court is that the suit be filed within six years of the accrual of the claim asserted. "Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. As the United States Court of Appeals for the Federal Circuit has observed:

> Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims. In Caguas Central Federal Savings Bank v. United States, we explained why this is so: "[I]n the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act." . . .

Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir.2002), quoting Caguas Central Federal Savings Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir.2000). Although there was some disagreement in earlier cases concerning whether failure to state a claim rather than lack of subject matter jurisdiction was the more appropriate ground for dismissal based upon the statute of limitations contained in section 2501, the Supreme Court, in its recent decision in John R. Sand & Gravel v. United States, 128 S. Ct. 750, 757 (2008), confirmed that section 2501 is jurisdictional. See Tamerlane, Ltd. v. United States, 80 Fed. Cl. 724, 732-33 (2008), appeal pending, No. 2008-5071 (Fed. Cir.).

The claims in this case accrued by February 3, 1993, because Parkwood sought to prepay the loan in question by that date and was not permitted to do so.

A. Parkwood's Claim Accrued By February 3, 1993, When The Government Failed To Allow Parkwood To Prepay Its Loan As Requested

The principles governing the time of accrual of claims based upon the prepayment restrictions imposed by ELIHPA were addressed by the Supreme Court in Franconia Associates v. United States, 536 U.S. 129 (2002). In Franconia, the Supreme Court reversed the decisions of this Court and of the Federal Circuit (which had held that the plaintiffs' claims accrue upon the enactment of ELIHPA), and stated: "Unless petitioners treated ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." Id. at 143 (footnote omitted). Although the Supreme Court's analysis of the statute of limitations issue focused upon the breach of contract claims, the Court reached the same conclusion with respect to the takings claims. 536 U.S. at 149.

Although Parkwood's complaint mentions only its attempt to prepay in 2003, Complaint ¶ 14, the fact is that Parkwood first attempted to prepay in 1992. App. 1, 4-22. In a written request dated August 3, 1992, Parkwood stated that it wished to prepay its loan on February 3, 1993. App. 4. The request was renewed in September 1992. App. 26. The request, however, was never granted. Under Franconia, Parkwood's claim accrued no later than February 3, 1993, the intended date of prepayment stated in Parkwood's 1992 prepayment request. Until that date, there remained at least a theoretical possibility that the Government would grant the request. After that date, however, the failure to respond constituted a failure to allow prepayment as requested.

B. Parkwood Cannot Avoid the Consequence Of Its Unsuccessful Attempt To Prepay In 1993 By Characterizing Its 1992 Submission As Something Other Than A Prepayment Request

Parkwood's August 2, 1992 letter unambiguously states: "This letter, along with the accompanying documents, represents our formal request to prepay Parkwood Associates, RRH #515 Plan II RA loan on February 3, 1993." App. 4. And, nothing in the referenced "accompanying documents" suggests that the August 2, 1992 submission was anything other than a prepayment request. App. 5-22. In response to our requests for admissions, however, Parkwood admits only that the submission was made, and asserts, contrary to the plain language of the submission, that it was not truly intended as a prepayment request. In response to a request to admit that "[b]y letter dated August 3, 1992, Parkwood submitted to the [FmHA] a request to prepay the March 22, 1978 loan referenced in paragraph 4 of the complaint in this case," Parkwood states:

> Denied. On August 3, 1992, Plaintiff submitted an application to the Defendant for purposes of obtaining an equity loan incentive offer as authorized by defendant's then existing prepayment statutes and regulations. . . . . Plaintiff denies that it submitted its August 3, 1992, application for the purpose of prepaying its March 22, 1978 loan.

App 27-28. At the same time, Parkwood undermines the basis for its assertion concerning the purpose for which the August 3, 1992 application was sent. In response to a request to admit that "[t]he document attached as Exhibit 1 (bearing bates stamp number PATT 0001028 - 0001046) is a true and correct copy of Parkwood's August 3, 1992 prepayment request referenced in Admission No. 1," Parkwood states:

> [P]laintiff is without sufficient information to admit or deny this request and therefore denies the same. The letter bearing the Bates range PATT 0001028 is signed by William Wood. Mr. Wood is no longer affiliated with Parkwood Associates and his whereabouts

> are unknown. The current general partner of plaintiff, Diana Arms Management Company LLC and plaintiff's limited partner R.F. Taplett have no personal knowledge of the documents referenced in this request for admission and therefore cannot attest to their authenticity.

App. 28 (emphasis added). Implicit in this response is that the present management of Parkwood does not know what motivated Mr. Wood to submit the August 3, 1992 letter and its enclosures. Whether or not Parkwood was interested in obtaining an equity loan incentive offer in 1992, Parkwood concedes that it is without sufficient information to state that the purpose of the August 3, 1992 submission was anything other than the purpose stated in the submission itself: to prepay Parkwood's loan on February 3, 1993.

Further, even if the unstated intention behind the August 3, 1992 submission were to obtain an equity loan incentive offer, this would not detract from the effect of the submission as an attempt to prepay, the failure of which triggered accrual of Parkwood's claim. A similar effort to circumvent the statute of limitations by characterizing a prepayment request as a mere attempt to obtain an equity loan incentive offer was rejected by this Court in Tamerlane. The plaintiffs in Tamerlane in fact obtained equity loan incentive offers in response to their prepayment requests, accepted these offers, and received equity loans. The Court held that, for purposes of determining when the plaintiffs' claims accrued, the applications that prompted the incentive offers were prepayment requests, that for the Government to offer incentives instead of simply allowing prepayment as requested was inconsistent with the unfettered right to prepay alleged in that case (and alleged here; see Complaint ¶ 5); and the plaintiffs' claims accrued no later than when they received the equity loans.

Thus, in a preliminary opinion issued in that case on May 18, 2007, ("Tamerlane I"), the Court observed:

> [T]he text of both prepayment requests . . . simply and unequivocally request permission to prepay plaintiffs' loans. By submitting these letters to FmHA, plaintiffs tendered prepayment of their outstanding loan obligations. That plaintiffs now claim that the letters were not intended as prepayment requests is immaterial. The letters demonstrate plaintiffs' unconditional offer to prepay their loans with FmHA. . . .

76 Fed. Cl. at 522 (emphasis added). And, in a subsequent opinion issued on February 29, 2008 ("Tamerlane II"), the Court observed:

> Because FmHA responded to Park Terrace's and Mullica's requests to prepay by acting upon ELIHPA's mandate to offer incentives in the face of Park Terrace's and Mullica's absolute and unfettered rights to prepay, the Government dishonored its performance obligation to accept prepayment and thus committed a breach. As these actions were the dishonor that ELIHPA – as a repudiation – contemplated, Park Terrace's and Mullica's breach claims accrued at least by 1992 and 1991 when FmHA and responding plaintiffs entered into incentive-loan transactions. . . .

80 Fed. Cl. at 735.

Here, as in Tamerlane, plaintiffs's claim that its 1992 submissions were "not intended as prepayment requests is immaterial." And, if responding to a prepayment request by providing an equity loan in lieu of prepayment triggers the statute of limitations regardless of whether the unstated purpose of the request was to obtain an equity loan, then, a fortiori, allowing the proposed prepayment date to pass with no response at all triggers the statute of limitations.

## II. The Complaint Fails To State A Claim For An Uncompensated Taking

The right alleged to have been infringed by the Government was Parkwood's right, under the promissory note, to prepay its FmHA loan. This is a right arising from a contract between Parkwood and the Government. Although Parkwood frames its claim in terms of a taking of its property through restrictions upon the use of its housing project, Complaint ¶ 24, Parkwood alleges no restrictions other than those to which it agreed in return for a subsidized FmHA loan.

If Parkwood possessed a right to terminate these restrictions by prepaying its loan, then that right was based strictly upon the terms of the promissory notes, and was thus a contract right. If the contracts required the Government to accept prepayments offered by Parkwood under the circumstances alleged in the complaint the Government refused to do so, then the contract was breached. If the contracts did not require the Government to accept prepayment under these circumstances, then there was not only no breach of contract, but also no taking. Parkwood's rights as owners of the property in question did not, after all, include a right to use the property in a manner prohibited by a valid and existing contract .

Under these circumstances, Parkwood cannot maintain a takings claim. "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." Sun Oil Co. v. United States, 572 F.2d 786, 818, 215 Ct. Cl. 716 (1978). Remedies for alleged infringement of any contractually-established rights generally lie in contract, not the Fifth Amendment. Id.; accord Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); Baggett Transportation Co. v. United States, 969 F.2d 1028, 1034 (Fed. Cir. 1992). Although rights existing independently of a contract are not necessarily restricted to contractual remedies, see Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34-35 (1998), such rights cannot give rise to a takings claim if the claim depends upon rights and obligations created by a contract with the Government. Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003).

Further, compensation under the Takings clause is a remedy for actions taken by the Government in its sovereign capacity, under its power of eminent domain, not actions taken by the Government in its proprietary capacity. Sun Oil, 572 F.2d at 818. Based upon this principle

and an extensive analysis of takings jurisprudence generally, this Court, in a decision on the merits after remand from the Supreme Court in Franconia, rejected takings claims virtually identical to those asserted here, and explained:

> The foregoing analysis resonates in the case sub judice, in which the central hypothesis is that the government acted in a proprietary capacity in passing legislation that abridged plaintiffs' prepayment rights. If this is true . . . [,] it follows, a fortiori, that defendant, while repudiating its contracts, did not effectuate a taking. Because this conclusion stems from the nature of the power invoked by Congress in impacting plaintiffs' property, rather than the nature of the property itself, it applies, with equal force, to plaintiffs' contract rights and the [housing] complexes they acquired under the program. As to the former, it remains that when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in a contract claim, not one for a taking. See Allegre Villa [v. United States], 60 Fed. Cl. [11], 18-19 [(2004)]; Detroit Edison Co. [v. United States], 56 Fed. Cl.[299], 303 [(2003)]. The same holds true as to the complexes themselves--no regulatory taking occurred because the Congress did not appropriate those properties in its sovereign capacity for public use. . . .

Franconia Assocs. v. United States, 61 Fed. Cl. 718, 739-740 (2004) (footnotes omitted). The takings claims rejected in Allegre Villa were, like those in Franconia, virtually identical to those asserted here. More recently, a similar takings claim was rejected by this Court in Tamerlane II, 80 Fed. Cl. at 737-38. For the reasons stated in all of these cases, the takings claims in this case should be dismissed.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered in the Government's favor, dismissing this action for lack of jurisdiction, or, in the alternative, dismissing Count Two of the complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

**s/Brian M. Simkin**
BRIAN M. SIMKIN
Assistant Director

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

September 12, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 12th day of September 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Shalom Brilliant**