# APPENDIX

# INDEX TO APPENDIX

Declaration of Don Wagoner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit A to Declaration of Don Wagoner:
Prepayment Package (August 3, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exhibit B to Declaration of Don Wagoner:
Letter from David F. Dixon to Scott G. Campbell (August 27, 1992) . . . . . . . . . . . . . . . 23

Exhibit C to Declaration of Don Wagoner:
Letter from William H. Wood to Jackie Gleason (September 3, 1992) . . . . . . . . . . . . . 25

Plaintiff's Responses to Defendant's first Requests for Admission . . . . . . . . . . . . . . . . . . . . . 27

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARKWOOD ASSOCIATES LIMITED PARTNERSHIP, a Washington limited partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-742C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF DON WAGONER

I, Don Wagoner, declare as follows:

1. I am a Business Program Specialist with the United States Department of Agriculture in Olympia, Washington. In the early 1990s, and at all times relevant to this declaration, I was responsible for handling the Farmers Home Administration ("FmHA") file relating to Parkwood Associates Limited Partnership ("Parkwood"). FmHA is now known as Rural Housing Service ("RHS"). I make this declaration based on my review of RHS's official loan file.

2. On August 4, 1992, FmHA received a prepayment request from Parkwood, dated August 3, 1992. A true and correct copy of this prepayment request, with enclosures, is attached as Exhibit A.

3. Initially, FmHA believed the request could not be processed, because Parkwood's files were impounded by the USDA Office of Inspector General ("OIG") due to an investigation concerning Parkwood's manager, National Partnership Management, Inc. However, on August 27, 1992, the OIG Regional Inspector General

advised the manager's attorney that the files would be available for FmHA to process the prepayment request. A true and correct copy of a letter dated August 27, 1992, from David F. Dickson, Regional Inspector General, to Scott G. Campbell regarding National Partnership Management, Inc. is attached as Exhibit B.

4. On August September 3, 1992, FmHA received Parkwood's resubmitted prepayment request, dated September 2, 1992. A true and correct copy of Parkwood's letter dated September 2, 1992 submission is attached as Exhibit C.

5. Upon a diligent investigation into the matter, including a review of the pertinent agency's records concerning this matter, I am unaware of any action having been taken in response to the resubmitted prepayment request, and, upon that basis, believe that no such action was taken.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 9th day of September 2008.

Don Wagoner
DON WAGONER

**EXHIBIT A**

AUG - 4 1992

*PARKWOOD ASSOCIATES LIMITED PARTNERSHIP*
*11027 N.E. 4th, P.O. Box 97311*
*Bellevue, Washington 98009*
*(206) 454-8442*

2
0

August 3, 1992

Mr. Donald Wagoner
District Director
FARMERS HOME ADMINISTRATION
1011 E. Main Street, Suite 306
Puyallup, WA 98372

RE: PREPAYMENT PACKAGE
PARKWOOD APARTMENTS/PARKWOOD ASSOCIATES

Dear Mr. Wagoner:

This letter, along with the accompanying documents, represents our formal request to prepay Parkwood Associates, RRH #515 Plan II RA loan on February 3, 1993.

As set forth in FmHA instruction 1965-B, Exhibit E, "Prepayment Request of Rural Housing Loans", which allows prepayment of loans obligated prior to December 21, 1979, which are not subject to restrictive use provision, we have enclosed a completed prepayment request for Parkwood Associates, for your review and approval.

In support of our request, we have included the following documentation as outlined in Exhibit B & C of FmHA instructions:

* FmHA Prepayment Report (Exhibit C)
* Statement of Budget and Cash flow
* Market Survey
* Bank commitment letter
* Project Worksheet
* Loan Agreement
* Rental Assistance Agreement
* Borrowers Certification of Fair Housing Policies.

Should you wish any further information, please feel free to contact our office.

Sincerely,

Parkwood Associates Limited Partnership
William R. Wood
Managing General Partner

# FMHA PREPAYMENT REPORT

1. NAME OF BORROWER: PARKWOOD ASSOCIATES

2. NAME OF PROJECT: PARKWOOD APARTMENTS

3. CASE AND PROJECT NUMBER: Case #56-029-910982220
Project # 01-8

4. DATE OF LOAN APPROVALS: 3/22/78
TRANSFERS: NA
REAMORTIZATION: NA

5. TYPE OF BORROWER ENTITY AND PLAN OF OPERATION: Limited Partnership, RRH #515 Plan II RA

6. NUMBER OF UNITS IN THE PROJECT: 32 units (family)

7. NUMBER OF ELIGIBLE TENANTS PRESENTLY OCCUPYING UNITS: 31 plus manager [see Project Worksheet]

8. ESTIMATED REPLACEMENT COST PER UNIT: $41,000.00

9. ESTIMATE OF THE NUMBER OF HOUSEHOLDS THAT WILL BE DISPLACED AS A RESULT OF PREPAYMENT: 31 households (100%)

10. ESTIMATED RELOCATION COST OF THE HOUSEHOLDS BEING DISPLACED: $450.00 - $550.00

11. INDICATION OF THE DISPLACED HOUSEHOLDS' ABILITY TO PAY RELOCATION COSTS: Since these tenants are all low income, with most receiving rental assistance, it is apparent that they would not be able to pay the relocation costs.

12. INCOME RANGE OF THE TENANTS PRESENTLY IN THE PROJECT: [See Project Worksheet]

13. NUMBER OF ELDERLY TENANTS IN THE PROJECT: 7

14. PRESENT RENTS AND RENTS PROJECTED AFTER PREPAYMENT:
[See Statement of Budget and Cash Flow]
Current Rents: 1BD = $246
2BD = $296

After Prepayment: 1BD = $400
2BD = $450

15. NUMBER AND TYPE OF SECTION 8 OR RA UNITS, AND WHETHER SECTION 8 WILL CONTINUE AFTER PREPAYMENT: 26 units RA No, RA will not continue after prepayment.

    A. EARLIEST DATE BORROWER CAN "OPT-OUT" OF SECTION 8: No Section 8 at this project.

16. ANY CAUSE OF DISPLACEMENT OTHER THAN RENT: No

17. AVAILABILITY OF OTHER VACANT UNITS IN THE AREA AND THEIR RENTAL STRUCTURE: [See Market Survey]

18. THE DISTRICT OFFICE'S RECOMMENDATION ON THE FINAL ACTION:

19. DATE OF PREPAYMENT: February 3, 1993

20. WHETHER RESTRICTIVE-USE PROVISIONS ARE OPERABLE AND DATE THEY EXPIRE: None

21. WHETHER RESTRICTIVE-USE PROVISIONS WILL REMAIN IN RELEASE OF SECURITY DOCUMENTS AND, IF AN EXCEPTION WAS GRANTED, THE BASIS FOR THIS EXCEPTION. NA

22. WHETHER (AND WHICH) INCENTIVES WERE OFFERED TO REMAIN IN THE PROGRAM AND REASON FOR NON-ACCEPTANCE (IF KNOWN).

23. WHETHER HOUSING WAS OFFERED FOR SALE TO A NON-PROFIT OR PUBLIC AGENCY AND THE RESULT.

USDA-FMHA
Form FmHA 1930-7
(Rev. 10-31-83)

Position 3

Form Approved
OMB No. 0575-0033
Expires 10/84

STATEMENT OF BUDGET AND CASH FLOW
(Excluding Depreciation)

Date Project Operational
March 1978

FmHA Case No.
56 29 1329909

Type of Loan: RRH | Amount: $567,900

Name & Address of Borrower (Include Zip Code)

Parkwood Associates
P. O. Box 97311
Bellevue, Washington 98009

Project Name & Address

Parkwood Apartments
501A Filbert Lane
Burlington, Washington 98233

| Fiscal Year: Jan. 1 thru Dec. 31 | Column (1) | Column (2) | Column (3) | Column (4) |
|---|---|---|---|---|
| | Basic Budget (Prior Year) | Actual or Mkt. (Interim Yr.) | Prepayment Budget | |
| 1. Unrestricted Cash | $3,317 | $3,317 | $0 | |
| 2. Total Operation & Maintenance Expense | $90,422 | $75,673 | $74,567 | |
| Other Deductions | 1-1-91 | 1-1-91 | | |
| 3. FmHA Payment (P&I) inc. overage | $14,460 | $14,448 | $80,458 | |
| 4. Transfer to Reserve | $5,850 | $5,850 | $8,376 | |
| 5. Authorized Capital Improvement INCR IN T&I | | $923 | | |
| 6. Other Authorized Debt Payments INCR IN ACCTS PYBL | | ($9) | | |
| 7. Other (Specify) Reserve Withdrawals | ($13,189) | ($7,646) | | |
| 8. Return to Owner $ 41856 @ 8 % | $3,348 | | $0 | |
| 9. Total Cash Needed (Add lines 2-8) | $100,891 | $89,239 | $163,401 | |
| Other Receipts | | | | |
| 10. Laundry | $2,172 | $1,550 | $1,560 | |
| 11. Interest Income | $1,260 | $1,151 | $1,282 | |
| 12. Other (Specify)Overages, Late Fees, etc. | | $366 | $144 | |
| Receipts From Rent — No. Kind — Per Month: Basic / Market / Prepayment Rents | | | | |
| 13. 12 1Br Units@ 161 234 | $26,532 | | $0 | |
| 14. 20 2Br Units@ 211 305 | $55,220 | | $0 | |
| 15. 12 1Br Units@ 246 319 400 | $2,952 | | $57,600 | |
| 16. 20 2Br Units@ 296 390 450 | $5,920 | | $108,000 | |
| 17. Less Allowance for Vacancy and Contingencies as authorized by FmHA 2 % | $1,812 | | $3,312 | |
| 18. Total Receipts from Rent (Add lines 13-16 & subt. line 17) | $88,812 | $90,001 | $162,288 | |
| 19. Total Receipts (Add lines 10-12 & 18) | $92,244 | $93,068 | $165,274 | |
| 20. Unrestricted Cash (Ending) | ($5,330) | $7,146 | $1,873 | |
| Replacement Reserve | Budget Prior Year | Actual | Budget Planned | |
| Reserve Balance | $25,112 | $25,112 | $23,316 | |
| Deposits to Reserve | $5,850 | $5,850 | $8,376 | |
| Interest on Reserve | | | | |
| Total | $30,962 | $30,962 | $31,692 | |
| Withdrawals from Reserve | | | | |
| Equipment Replacement | $1,200 | | | |
| Major Building Repairs | $3,189 | | | |
| Miscellaneous | $8,800 | $7,646 | | |
| Total | $13,189 | $7,646 | $0 | |
| Reserve Balance | $17,773 | $23,316 | $31,692 | |
| Net Increase (Decrease) | ($7,339) | ($1,796) | $8,376 | |



PATT 0001031

(7/12/85)

| Annual Operational & Maintenance Expenses: | Column (1) Budget Basic (Prior Year) | Column (2) Actual or Mkt. (Interim Yr.) | Column (3) Prepayment Budget | Column (4) |
|---|---|---|---|---|
| 1. Caretaker | $6,084 | $6,537 | $6,566 | |
| 2. Supplies | $1,150 | $1,319 | $1,150 | |
| 3. Painting & Decorating (Interior Only) | $2,090 | $728 | $2,090 | |
| 4. General Maintenance & Repairs | $9,907 | $7,287 | $7,557 | |
| 5. Grounds Maintenance | $2,086 | $4,658 | $2,086 | |
| 6. Services | $300 | | $300 | |
| 7. Furniture and Furnishings Replacement | $17,889 | $5,937 | $2,568 | |
| 8. Miscellaneous Operating Expenses | $930 | $716 | $930 | |
| 9. Sub-total Maintenance & Operating (Total lines 1 thru 8) | $40,436 | $27,182 | $23,247 | |
| 10. Electricity | $2,328 | $2,279 | $2,376 | |
| 11. Water | $1,920 | $1,581 | $1,920 | |
| 12. Sewer | $4,752 | $4,507 | $4,470 | |
| 13. Heating fuel/Other | | | $0 | |
| 14. Garbage and Trash Removal | $2,580 | $2,797 | $2,814 | |
| 15. Sub-total Utilities (Total lines 10 thru 14) | $11,580 | $11,164 | $11,580 | |
| 16. Mgr.Salary Apt. | $7,557 | $7,222 | $7,762 | |
| 17. Management Fees % | $8,881 | $8,664 | $9,737 | |
| 18. Accounting-Auditing | $3,400 | $3,120 | $3,000 | |
| 19. Legal | $750 | $194 | $750 | |
| 20. Other Administrative Expenses | $708 | $687 | $804 | |
| 21. Sub-total Administrative(Total lines 16 thru 20) | $21,296 | $19,887 | $22,053 | |
| 22. Real Estate Taxes | $8,408 | $8,407 | $11,112 | |
| 23. Special Assessments | | | | |
| 24. Other Taxes, Fees, and Permits | $100 | $48 | $100 | |
| 25. Sub-total Taxes (Total lines 22 thru 24) | $8,508 | $8,455 | $11,212 | |
| 26. Property Insurance | $4,473 | $4,473 | $1,991 | |
| 27. Workman's Compensation Insurance | $600 | $539 | $600 | |
| 28. Bond Premiums | $200 | $0 | $256 | |
| 29. Sub-Total Insurance (Total lines 26 thru 28) | $5,273 | $5,012 | $2,847 | |
| 30. Interest Expense (Other than FmHA) | | $440 | $348 | |
| 31. Other Expenses Misc. & Manager's Benefits | $2,610 | $2,784 | $2,736 | |
| 32. Advertising | $220 | $296 | $220 | |
| 33. Travel & Seminars | $499 | $453 | $325 | |
| 34. Bad Debts | | $0 | $0 | |
| 35. Energy Audit | | | | |
| 36. Rent-Up Expense | | | | |
| 37. Sub-total Other Expenses (Total lines 30 thru 36) | $3,329 | $3,973 | $3,629 | |
| 38. TOTAL Operational and Maintenance Expenses (Total lines 9,15,21,25,29, and 37) | $90,422 | $75,673 | $74,567 | |

CERTIFIED CORRECT

[signature]

(Borrower's Signature or Authorized Representative)

7/21/92

(Date)

APPROVED: (Farmers Home Administration)

(Name)

(Title)

(Signature)

(Date)

#PM-S22
9/1/82

SUBJECT PROPERTY: PARKWOOD APARTMENTS

BUILDING AND RENT SURVEY

DATE OF SURVEY: JULY 1992 PROPERTY INSPECTED BY: ____________

| APARTMENT NAME AND ADDRESS | NO. OF UNITS | NO. VAC. | DATE COMP. | TYPE OF BUILDING | TYPE UNIT | BDRM BATH MIX | RENT RANGE UNF. | PREMIUM FOR FURN. | UNIT SIZE SQ.FT. | RENT PER SQ.FT | AMENTITIES Pool | Sauna | Gym | Other | HEAT A/C | LEASE REQ. | CLEANING & SEC. DEP. REF. | N/REF. | RENT POLICY CHILDREN | PETS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RIO VISTA<br>422 N. LaVenture<br>Mt. Vernon, WA<br>424-4622 | 16 | 0 | 1977 | single story | 2BD | | 500 | | 700 | | | | | | elec. no A/C | | | 250 | yes | |
| TAM O'SHANTER<br>200 S. LaVenture<br>Mt. Vernon, WA<br>424-4300 | 195 | 0 | 1979 | townhs. & single | 1BD<br>1BD<br>2BD | reg.<br>Large | 450<br>485<br>525 | | 900 plus | | X | | | play grnd | elec. no A/C | | | 500 | yes | |
| CEDARS<br>1166 Wicker Road<br>Sedro Wooley, WA | 40 | 0 | 1976 | single story | 1BD<br>2BD | | 400<br>450 | | 596<br>612 | | | | | | elec. no A/C | | | 150<br>250 | yes | |

9

| UTILITIES | | | | FEATURES | | | | | | | | | * WAITING LIST? HOW LONG? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELEC. | GAS | CABLE TV | OTHER | DISH WASHER | DISPOSAL | FIRE PLACE | GARAGE/ CARPORT | DECK/ PATIO | EXTRA PARKING AND STORAGE | LAUNDRY | OTHER | SUBSIDIZED/ CONVENTIONAL | REMARKS |
| x | | x | | | | | | | parking | in units | | conventional | no |
| x | | x | | x | x | in large 1BD | covered parking | | | 1 laundry per 6 units | | conventional | yes |
| x | | x | | | | | | | parking | 1 room in bldg. | | conventional | yes |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

EASTSIDE MORTGAGE COMPANY
Mortgage Banking

July 30, 1992

Parkwood Associates
Attn. Mr. William Wood
P. O. Box 97311
Bellevue, WA 98009

RE: Parkwood Apartments, Burlington, WA

Dear Mr. Wood.
Eastside Mortgage Company (EMC), is pleased to be able to pursue a loan application for a permanent loan commitment based on the following terms:

| | |
|---|---|
| Loan Amount: | $650,000 |
| Interest Rate: | 9.25% |
| Term: | 5 years |
| Amortization: | 25 years |
| Loan Fee: | 2.0% |
| Prepay. Penalty: | 1.0% |

The subject loan proposal is based on your current NOI of $89,398 and a maximum loan to value ratio of 80%. Please be aware, that a current MAI appraisal will be required, prior to closing. Furthermore, the interest rate of 9.25% and the loan fee of 2.0%, may not be guaranteed, as these items will be fixed at the time of loan commitment.

Sincerely.

George Kanalos, president

2025 First Avenue 1000 Market Place Tower
Seattle, Washington 98121
Tel: (206) 441-2950 Fax: (206) 727-2719

PART II

Page 1 of 2 | Name of Borrower PARKWOOD ASSOCIATES | Reflects data as of 1st day of JULY 1992

| 1. Apt. No. | 2. Type BR | 3. No. of Indiv. in Unit | 4. Initial Occupancy Date | 5. Exp. Date of Tenant Certification | 6. Leased To | 7. Basic Monthly Rent | 8. Market or Contract Monthly Rent | 9. % of Income | 10. Tenant Adjusted Annual Income | 11. Monthly Utility Allow. | 12. Monthly Tenant Contribution | 13. Amt. Due Tenant to cover utilities | 14. Rental Assistance Due Borrower | 15. Overage and/or Surcharge |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 411A | 1 | 1 | 12/15/91 | 1/93 | RADICH, J | 246 | 319 | 30% | 4800 | 64 | 56 | | 190 | |
| 411B | 1 | 1 | 1/1/92 | 7/93 | DALTON, S | 246 | 319 | 30% | 3480 | 64 | 82 | | 164 | |
| 413A | 1 | 1 | 5/1/92 | 5/93 | MAHALA | 246 | 319 | 30% | 4760 | 64 | 55 | | 191 | |
| 413B | 1 | 1 | 4/1/80 | 2/93 | KING, C | 246 | 319 | 30% | 4600 | 64 | 51 | | 195 | |
| 415A | 1 | 1 | 9/1/86 | 9/92 | PENROSE, J | 246 | 319 | 30% | 4520 | 64 | 49 | | 197 | |
| 415B | 1 | 1 | 4/1/92 | 4/93 | SCHESSLER,L | 246 | 319 | 31% | 12160 | 64 | 246 | | | |
| 417A | 1 | 1 | 8/15/91 | 1/93 | THOMAS, S | 246 | 319 | 30% | 4760 | 64 | 55 | | 191 | |
| 417B | 1 | 2 | 6/1/92 | 6/93 | GALLIGHER | 246 | 319 | 30% | 11440 | 64 | 246 | | | |
| 419A | 1 | 2 | 8/1/86 | 2/93 | BYRD, B | 246 | 319 | 30% | 8280 | 64 | 133 | | 113 | |
| 419B | 1 | 1 | 11/1/89 | 7/93 | KLEPICH, M | 246 | 319 | 30% | 1520 | 64 | 127 | | 119 | |
| 421A | 1 | 1 | 12/1/85 | 5/93 | FELIX, J | 246 | 319 | 30% | 4840 | 64 | 57 | | 189 | |
| 421B | 1 | 1 | 11/1/89 | 5/93 | BENNER, N | 246 | 319 | 31% | 680 | 64 | | 47 | 293 | |
| 423A | 2 | 4 | 12/15/91 | 6/93 | REYES, S / RUIZ | 296 | 390 | 30% | 12840 | 84 | 237 | | 59 | |
| 423B | 2 | 4 | 6/1/87 | 12/92 | BROOLING, L | 296 | 390 | 30% | 4920 | 84 | 39 | | 257 | |
| 425A | 2 | 2 | 4/1/90 | 3/93 | TICKER, T | 296 | 390 | 30% | 8480 | 84 | 128 | | 168 | |
| 425B | 2 | 3 | 1/1/84 | 4/93 | TAPIA, R | 296 | 390 | 30% | 4560 | 84 | 30 | | 266 | |
| 427A | 2 | 2 | 9/1/91 | 9/92 | LUCERO, M | 296 | 390 | 30% | 4640 | 84 | 32 | | 264 | |
| 427B | 2 | 2 | 1/1/87 | 9/92 | MANION, R | 296 | 390 | 30% | 4640 | 84 | 32 | | 264 | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | TOTALS | 16 | | 17 | 18 |

xO

PART II

Page 2 of 2 | Name of Borrower: PARKWOOD ASSOCIATES | Reflects data as of 1st day of JULY 1992

| 1. Apt. No. | 2. Type BR | 3. No. of Indiv. in Unit | 4. Initial Occupancy Date | 5. Exp. Date of Tenant Certification | 6. Leased To | 7. Basic Monthly Rent | 8. Market or Contract Monthly Rent | 9. % of Income | 10. Tenant Adjusted Annual Income | 11. Monthly Utility Allow. | 12. Monthly Tenant Contribution | 13. Amt. Due Tenant to cover utilities | 14. Rental Assistance Due Borrower | 15. Overage and/or Surcharge |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 429A | 2 | 2 | 11/1/84 | 11/92 | RICHARDS, P | 296 | 390 | 30% | 4640 | 84 | 32 | | 264 | |
| 429B | 2 | 2 | 1/1/87 | 4/93 | JENKINS, L | 296 | 390 | 30% | 3120 | 84 | | 6 | 302 | |
| 431A | 2 | 2 | 8/1/81 | 7/93 | SINES, C | 296 | 390 | 30% | 9480 | 84 | 32 | | 264 | |
| 431B | 2 | 4 | 11/1/86 | 5/93 | VAZQUEZ | 296 | 390 | 30% | 15200 | 84 | 296 | | | |
| 433A | 2 | 2 | 2/1/85 | 9/92 | SANCHEZ, L | 296 | 390 | 30% | 5360 | 84 | 50 | | 246 | |
| 433B | 2 | 3 | 1/15/91 | 6/93 | DERHAM, A | 296 | 390 | 30% | 9160 | 84 | 145 | | 151 | |
| 501A | 2 | 2 | 10/1/87 | | WILLARD, J - MANAGER | 296 | 390 | 30% | | 84 | 296 | | | |
| 501B | 2 | 4 | 11/1/89 | 9/92 | JENKINS, K/ DEAN | 296 | 390 | 30% | 15240 | 84 | 297 | | | 1 |
| 503A | 2 | 2 | 3/1/87 | 7/93 | RUIZ, M | 296 | 390 | 30% | 5240 | 84 | 32 | | 264 | |
| 503B | 2 | 2 | 6/1/92 | 6/93 | MILES, D | 296 | 390 | 30% | 10720 | 84 | 184 | | 112 | |
| 505A | 2 | 2 | 8/1/91 | 7/93 | KESTER, R | 296 | 390 | 30% | 8280 | 84 | 125 | | 171 | |
| 505B | 2 | 2 | 2/1/90 | 2/93 | PALMER, G | 296 | 390 | 30% | 4640 | 84 | 32 | | 264 | |
| 507A | 2 | 2 | 12/20/91 | 1/93 | DAY, M | 296 | 390 | 30% | 15640 | 84 | 307 | | | 11 |
| 507B | 2 | 2 | 11/1/85 | 1/93 | BENNER, W | 296 | 390 | 30% | 9920 | 84 | 164 | | 132 | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | 26 UNITS OF RENTAL ASSISTANCE | | | | | 8872<br>8872 | | | | TOTALS | 3647 | 53 | 5290 | 12 |

16. 17. 18.

FmHA Instruction 444.5
Exhibit H

# LOAN AGREEMENT
## (RRH LOAN TO INDIVIDUAL OPERATING ON A LIMITED PROFIT BASIS)

1 Parties and Terms Defined. This agreement dated ____________ of the Undersigned Parkwood Associates, A Limited Partnership herein called "Borrower" whether one or more, whose post office address is c/o Forest Investment Corp., 10655 N.E. 4th, Suite 805, Bellevue, WA, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called "the Government," is made in consideration of a loan, herein called "the loan," to Borrower in the amount of $ 567,900.00 made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) and 521 (a) of the Housing Act of 1949. The loan may be insured by the Government for the benefit of the lender. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing." The indebtedness and other obligations of Borrower under the note evidencing the loan, the related security instrument and any related agreement are herein called the "loan obligations."

2 Equal Opportunity and Nondiscrimination Provisions. The Borrower will comply with (a) any undertakings and agreements required by the Government pursuant to Executive Order 11063 regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement" including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, (c) Farmers Home Administration Form FmHA 400-4, entitled "Nondiscrimination Agreement (Under Title VI, Civil Rights Act of 1964)," a copy of which is attached hereto and made a part hereof and any other understandings and agreements required by the Government pursuant to lawful authority

3 Supervised Bank Account. The DELETE proceeds of the loan and the amount of $____________, to be contributed from Borrower's own funds shall be deposited in a "supervised bank account," as required by the Government. As provided by the terms of the agreement creating the supervised bank account, all funds there shall, until duly expended, secure the loan obligations. Borrower's withdrawals from the supervised bank account shall be made only on checks signed by Borrower and countersigned by the County Supervisor of the Farmers Home Administration, and only for the specific loan purposes approved in writing by the Government. Borrower's share of any liquidated damages or other monies paid by defaulting contractors or their sureties shall be deposited in the supervised bank account to assure

DELETE

(1-15-75) SPECIAL PN

completion of the project. When all approved items eligible for payment with loan funds are paid in full, any balance remaining in the supervised bank account shall be applied on the loan obligations as an "extra payment" as defined in the regulations of the Farmers Home Administration, and the supervised bank account shall be closed.

4 Accounts for Housing Operations and Loan Servicing. Borrower shall establish on his books the following accounts, which shall be maintained so long as the loan obligations remain unsatisfied: A General Fund Account, an Operation and Maintenance Account, a Debt Service Account, and a Reserve Account. Funds in said accounts shall be deposited in a bank or banks insured by the Federal Deposit Insurance Corporation, except for any portion invested in readily marketable obligations of the United States as authorized by section 8 (a).

5 General Fund Account. By the time the loan is closed Borrower shall from his own funds deposit in the General Fund Account the amount of $ 11,956.00 . All income and revenue from the housing shall upon receipt be immediately deposited in the General Fund Account. Borrower may also in his discretion at any time deposit therein other funds, not otherwise provided for by this agreement, to be used for any of the purposes authorized in sections 6, 7, or 8. Funds in the General Fund Account shall be used only as authorized in said sections and, until so used, shall be held by Borrower in trust for the Government as security for the loan obligations.

6 Operation and Maintenance Account. Not later than the 15th of each month, out of the General Fund Account shall be transferred to the Operation and Maintenance Account sufficient amounts to enable borrower to pay from the Operation and Maintenance Account the actual, reasonable, and necessary current expenses, for the current month and the ensuing month, of operating and maintaining the housing not otherwise provided for. Current expenses may include, in addition to expenses occuring or becoming due monthly, monthly accumulations of proportionate amounts for the payment of items which may become due either annually or at irregular intervals, such as taxes, insurance, and normal repair and replacement of furnishings and equipment reasonably necessary for operation of the housing. Current expenses may also include initial purchase and installation of such furnishings and equipment with any funds deposited in and transferred from the General Fund Account which are not proceeds of the loan or income or revenue from the housing.

7 Debt Service Account. Each month, immediately after the transfer to the Operation and Maintenance Account provided for in section 6, or after it is determined that no such transfer is called for, any balance remaining in the General Fund Account, or so much thereof as may be

necessary, shall be transferred to the Debt Service Account until the amount in the Debt Service Account equals the amount of the next installment due on the loan. Funds in the Debt Service Account shall be used only for payments on the loans obligations and, until so used, shall be held by Borrower in trust for the Government as security therefor.

8 Reserve Account.

(a) Immediately after each transfer to the Debt Service Account as provided in section 7, any balance in the General Fund Account shall be transferred to the Reserve Account. Funds in the Reserve Account may be used only as authorized in this agreement and, until so used, shall be held by the borrower in trust as security for the loan obligations. Transfers at a rate not less than $ 450.00 1/ ~~annually~~ monthly shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $53,700.00 2/ and shall be resumed at any time when necessary, because of disbursements from the Reserve Account, to restore it to said sum. Of such sum, at least 50 percent shall be maintained on a cash basis, referred to herein as the "cash reserve." After the cash reserve reaches the required 50 percent of said sum, all or any portion of the balance of said sum may, at the option of the Borrower, consist of an amount, referred to as the "prepayment reserve," by which Borrower is "ahead of schedule" as defined in the regulations of the Farmers Home Administration. Funds in the cash reserve shall be deposited in a separate bank account or accounts insured by the Federal Deposit Insurance Corporation or invested in readily market obligations of the United States, the earnings on which shall accrue to the Reserve Account.

(b) With the prior consent of the Government, funds in the Reserve Account may be used by Borrower--

(1) To meet payments due on the loan obligations in the event the amount in the Debt Service Account is not sufficient for the purpose.

(2) To pay costs of repairs or replacements to the housing caused by catastrophe or long-range depreciation which are not current expenses under section 6.

(3) To make improvements or extensions to the housing.

(4) For other purposes desired by Borrower which in the judgement of the Government likely will promote the loan purposes without jeapordizing collectibility of the loan or impairing the adequacy of the security, or will strengthen the security, or will facilitate, improve, or maintain the orderly collectibility of the loan.

(5) To pay in dividends to the Borrower of up to 8 percent per annum of the borrower's initial investment of $______________ 3/ provided Borrower determines that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 8 (a) to be accumulated by that time, and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

(c) Any amount in the Reserve Account which exceeds the aggregate sum specified in subsection 9 (a) and is not agreed between the Corporation and the Government to be used for purposes authorized in subsection 9 (b) shall be applied promptly on the loan obligations.

9 Regulatory Covenants. So long as the loan obligations remain unsatisfied, Borrower shall--

(a) Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

(b) If return on investment for any year exceeds 8 percent per annum of Borrower's initial investment for $ 29,900.00 3/, the Government may require that the Borrower reduce rents the following year and/or refund the excess return on in investment to the tenants or use said excess in a manner that will best benefit the tenants.

(c) Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

(d) If required by the Government, revise the accounts herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attritutable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

(e) Unless the Government gives prior consent--

(1) Not use the housing for any purpose other than as rental housing and related facilities for such eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not cause or permit the transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(f) Submit for the housing the following to the Government for prior review not less than ___60___ days before the effective dates, and for prior approval if such approval is required by the Government.

(1) Annual budgets and operating plans, including proposed rents and charges and other terms of rental agreements with occupants, and compensation to employees chargeable as operating expenses to employees of the housing project.

(2) Statements of management policy and practice, including eligibility criteria and implementing rules for occupancy of the housing.

(g) If required by the Government, modify and adjust any matters covered by clause (e) of this section.

(h) Do other things as may be required by the Government in connection with the operation of the housing or with any of Borrower's operations or affairs which may affect the housing, the loan obligations, or the security.

10 Refinancing of Loan. If at any time it appears to the Government that Borrower is able to obtain a loan upon reasonable terms and conditions to refinance the loan obligations then outstanding, upon request from the Government, Borrower will apply for, take all necessary actions to obtain, and accept such refinancing loan and will use the proceeds for said purpose.

11 General Provisions.

(a) It is understood and agreed by Borrower that any loan made or insured by the Government will be administered subject to the limitations of the authorizing act of Congress and the related regulations, and that any rights granted to the Government herein or elsewhere may be exercised by it in its sole and exclusive discretion to carry out the purposes of the loan, enforce such limitations, and protect the Government's financial interest in the loan and the security.

(b) Borrower shall also comply with all covenants and agreements set forth in the note, security instrument, and any related agreements executed by Borrower in connection with the loan.

(c) The provisions of this agreement are representations to the Government to induce the Government to make or insure a loan to Borrower as aforesaid. If Borrower should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant hereto, such failure shall constitute default as fully as default in payment of amounts due on the loan. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

(d) Any provisions of this agreement may be waived by the Government, or changed by agreement between the Government and Borrower to any extent such provisions could legally have been foregone, or agreed to in amended form, by the Government initially. Any notice, consent, approval, waiver, or agreement must be in writing.

(e) This agreement may be cited in the security instrument and other instruments or agreements as the "Loan Agreement of ______________ 19____."
(date of this agreement)

PARKWOOD ASSOCIATES, A LIMITED PARTNERSHIP

BY: W. R. WOOD, General Manager
Borrower Forest Investment Corporation, General Partner

______________________________
Borrower MICHAEL A. MCKEAN, General Partner

1/ In most cases this figure should be one-tenth of the aggregate sum specified later in the sentence and indicated by footnote 2/.

2/ The amount to be inserted will usually be about 10 percent of the value of the buildings and related facilities financed wholly or partially with the loan.

3/ The amount to be inserted shall be determined in accordance with paragraph VIII K of FmHA Instruction 444.5.

o 0 o

Form FmHA 444-27
(9-22-78)

Position 2
UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

# RENTAL ASSISTANCE AGREEMENT

| CASE NO. 56-29-1329909 |
|---|
| LOAN CODE 84-01 |

*(Check appropriate block)*
☐ New Construction Project
☒ Existing Project

This Agreement effective on the 1st day of December, 19 79 between Parkwood Associates, A Limited Partnership (herein called "the borrower") and its successors and the United States of America acting through the Farmers Home Administration pursuant to Section 521 (a) (2) (A) of Title V of the Housing Act of 1949 as amended. (Herein called "the Government") Witnesseth:

In consideration of the Mutual Covenant hereinafter set forth, the Parties hereto agree as follows:

Section 1 The Government agrees to provide rental assistance in accordance with its governing rules and regulations for 14 units of housing for the project located at Burlington, Washington and known as Parkwood Apartments consisting of 32 units. The Government will pay the difference between 25 percent of the families' adjusted monthly income and the Government approved rents for the project.

Section 2 The borrower agrees to abide by the present and future regulations of the government in the administration of this program.

Section 3 Borrower agrees to use due diligence in the verification and certification of tenants' incomes.

Section 4 In the event that any tenant suffers a hardship because rental assistance may not be available in the project because of the limitations set forth on the number of units in Section 1, borrower may make requests to the Government for additional units. In the event additional units can be provided and are approved by the Government, this Agreement will be superseded by a modified agreement for the remaining term of this Agreement.

Section 5 Borrower will not permit any tenant to initially occupy a unit and receive rental assistance (or interest credit) if the number of authorized persons in the units is less or in excess of the following:

| | Occupants Min. | Occupants Max. |
|---|---|---|
| 0 - Bedroom | 1 | 2 |
| 1 - Bedroom | 1 | 2 |
| 2 - Bedroom | 2 | 4 |
| 3 - Bedroom | 4 | 6 |
| 4 - Bedroom | 6 | 8 |
| 5 Bedroom | 8 | 10 |

In some cases, however, such as a Labor Housing project built under the housing standards of the Department of Labor Occupational Safety and Health Administration (OSHA), or when a unit cannot be rented because a family of the size needed to rent the unit is not available, the State Director may with the prior consent of the National Office, authorize an exception to this Section.

Section 6 In the selection of tenants in the project that will receive rental assistance, the borrower agrees to comply with the Government priorities of selecting tenants. (See Paragraph VI of Exhibit R to FmHA Instruction 444.5) (Part 1822 Subpart D).

**Section 8 Renegotiation, Modification, Termination** – If, at any time during the life of this Agreement the Parties find that it would be to their best interes to the best interests of the rental assistan gram, the provisions of the agreement may be modified, amended, or the entire agreement be terminated, upon written ag... ent of the Parties.

**Section 9 Term of the Agreement** –

(a) Definitions:

(1) New construction project as used in this agreement is any project for which a request for obligation of rental assistance is made prior to completion of the project and any unit in the project occupied. The project will continue to be considered new construction for the complete term of this Agreement and modification thereof.

(2) Existing project as used in this Agreement is any project in which units have been occupied.

(b) In the case of a new construction project, this Agreement is for a period of twenty (20) years from the effective date mentioned in this Agreement. The term of any modified agreement which changes the number of units will be for the period beginning on the effective date of the modified agreement and ending twenty (20) years from the effective date of the initial agreement unless terminated in accordance with Section 8 or 10.

(c) In the case of an existing project, this Agreement is for a period of five (5) years from the effective date mentioned in this Agreement. The term of any modified agreement which changes the number of units will be for the period beginning on the effective date of the modified agreement and ending five (5) years from the effective date of the initial agreement unless terminated in accordance with Section 8 or 10.

(d) This Agreement is not renewable. If a need exists for rental assistance beyond the term or conditions of this Agreement, the borrower may, prior to the termination date of this Agreement, submit a Form FmHA 444-25, "Request for Rental Assistance." If a new agreement is consummated it will be made for a period not to exceed five (5) years.

**Section 10 Conditions for Termination** – Upon the accumulated disbursement and/or credit to the borrower's account of

$ 100,324.00 this Agreement is automatically terminated.

**Section 11 Special Conditions** – The following special conditions shall be applicable to this Agreement:

*(Check appropriate block)*

☒ This is an initial agreement

☐ This is a modification of the initial agreement dated ________ 19___.

PARKWOOD ASSOCIATES,
A LIMITED PARTNERSHIP
*(Borrower)*

XXXXXXX

XXXXXXX [signature]
Michael A. McKean
General Partner

[signature] *(Signature)*
W. R. Wood
General Manager of Forest Investment Corp.,
General Partner
*(Title)*

*Date:* 12/26/79

FARMERS HOME ADMINISTRATION

By: [signature]
Robert D. Wiley

District Director II

*Date:* 12-27-79

U.S.GPO:1978-0-665-011/1568

CERTIFICATION OF FAIR HOUSING POLICIES

I William R. Wood, general partner of Parkwood Associates, certify that I will continue to administer housing in accordance with the Fair Housing Policies.

Signed by: ______________________

William R. Wood, General Partner
PARKWOOD ASSOCIATES

Dated: 6/25/92

**EXHIBIT B**

United States Department of Agriculture
Office of Inspector General
Investigations Western Region
555 Battery Street
Room 611
San Francisco, CA 9411
(415) 556-6443

AUG 27 1992

Scott G. Campbell
Kelley Drye & Warren
101 Park Avenue
New York, New York 10178

Re: National Partnership Management, Inc.

Dear Mr. Campbell:

Your letter dated August 21, 1992, addressed to USDA Inspector General Leon Snead, has been forwarded to me for action and response.

We have contacted the Farmers Home Administration's State Office in Wenatchee, Washington, to inform them that all original files possessed by OIG in connection with our ongoing investigation have been, and remain, available to them for routine administrative needs.

FmHA has advised us that it will rescind in writing the directive concerning the unavailability of the project files, and will respond to your office in reference to the processing of National Partnership Management loan prepayment applications.

I would also like to apologize for any misunderstanding arising from the telephone conversation between your client's employee and Supervisory Special Agent Gary Clark in our Seattle suboffice. Agent Clark has assured me that he was not attempting to violate the agreement between yourself and the United States Attorney concerning your client's current employees not giving interviews.

Your client's employee called Agent Clark for assistance in resolving the problem which has become the subject of your letter. The employee has previously called Agent Clark for help in resolving other problems. Agent Clark immediately recognized that FmHA had taken a misguided position, and he took steps to correct the situation.

The NPM employee began her call by saying that she was contacting Agent Clark instead of an attorney to save the cost of counsel's involvement. In reference to that statement, and after Agent Clark had made contact with FmHA to correct the situation, he told the NPM employee that when she mentioned not wanting a lawyer, he thought she had finally agreed to give him an interview. Agent Clark has assured me that the comment was made in a lighthearted vein and that both he and the NPM employee laughed about it; and that both he and the NPM employee are aware that no interview will be granted.

If I can be of further assistance, please do not hesitate to call me at (415) 705-2255.

Sincerely,

David F. Dickson

DAVID F. DICKSON
Regional Inspector General
for Investigations

**EXHIBIT C**

*PARKWOOD ASSOCIATES LIMITED PARTNERSHIP*
*11027 N.E. 4th, P.O. Box 97311*
*Bellevue, Washington 98009*
*(206) 454-8442*

September 2, 1992

SEP -3 1992

Mr.Jackie Gleason
District Director
FARMERS HOME ADMINISTRATION
1011 E. Main Street, Suite 306
Puyallup, WA 98372

RE: PREPAYMENT PACKAGE
PARKWOOD APARTMENTS/PARKWOOD ASSOCIATES

Dear Mr. Gleason:

Our counsel has received a letter dated August 27, 1992 from David Dickson, FmHA Regional Inspector General for Investigations, in which Mr. Dickson states that the Farmers Home Administration's State Office in Wenatchee, Washington has advised that it will rescind in writing its directive concerning the unavailability of the project files for this and other projects managed by National Partnership Management and NPM, Inc. and that FmHA will respond in reference to the processing of loan pre-payment applications filed on behalf of such projects.

In addition, Mr. Dickson states that his office has advised the FmHA State Office in Wenatchee that all original files possessed by OIG have been, and remain , available to them for routine administrative needs. A copy of Mr. Dickson's letter of August 27, 1992 is enclosed.

Accordingly, please find enclosed the pre-payment package for Parkwood Associates. This package is being resubmitted for processing. We assume that, in view of the foregoing, FmHA will honor our original submission date of August 3, 1992.

We look forward to our package being processed favorably as of the original date of submission.

Should you wish any further information, please feel free to contact our office.

Sincerely yours,

Parkwood Associates Limited Partnership
William R. Wood
Managing General Partner

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PARKWOOD ASSOCIATES LIMITED PARTNERSHIP, a Washington limited partnership,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-742C<br>(Judge Allegra)<br><br>**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR ADMISSION** |

COPY

COMES NOW the plaintiff, Parkwood Associates Limited Partnership, by and through undersigned counsel, and responds to defendant's first requests for admission as follows:

**GENERAL RESPONSE**

Plaintiff denies each request for admission to the extent it is not unconditionally admitted in each specific response below.

**SPECIFIC RESPONSES**

REQUEST FOR ADMISSION NO. 1: By letter dated August 3, 1992, Parkwood submitted to the Farmers Home Administration, United States Department of Agriculture ("FmHA"), a request to prepay the March 22, 1978 loan referenced in paragraph 4 of the complaint in this case.

RESPONSE NO. 1: Denied. On August 3, 1992, Plaintiff submitted an application to the Defendant for purposes of obtaining an equity loan incentive offer as authorized by defendant's then existing prepayment statutes and regulations. See documents

Bates numbered P 0569-73 and P 0575-78 produced herewith. Plaintiff denies that it submitted its August 3, 1992, application for the purpose of prepaying its March 22, 1978 loan.

REQUEST FOR ADMISSION NO. 2: The document attached as Exhibit 1 (bearing bates stamp number PATT 0001028 – 0001046) is a true and correct copy of Parkwood's August 3, 1992 prepayment request referenced in Admission No. 1.

RESPONSE NO. 2: Plaintiff objects to this request to the extent the phrase "prepayment request" is vague and ambiguous. Without waiving this objection, plaintiff is without sufficient information to admit or deny this request and therefore denies the same. The letter bearing the Bates range PATT 0001028 is signed by William Wood. Mr. Wood is no longer affiliated with Parkwood Associates and his whereabouts are unknown. The current general partner of plaintiff, Diana Arms Management Company LLC and plaintiff's limited partner R.F. Taplett have no personal knowledge of the documents referenced in this request for admission and therefore cannot attest to their authenticity.

REQUEST FOR ADMISSION NO. 3: Parkwood's August 3, 1992 letter, referenced in Admission No. 1, stated that Parkwood wished to prepay the March 22, 1978 loan on February 3, 1993.

RESPONSE NO. 3: Plaintiff admits that its August 3, 1992, letter references a proposed prepayment date of February 3, 1993. However, as stated in Response No. 1, plaintiff's intent in filing this application was to obtain an equity loan incentive offer from the defendant and not to prepay the March 22, 1978 loan. To obtain an equity incentive loan offer, defendant's then existing statutes and regulations required plaintiff to complete an application that identified a prepayment date that was at least 6 months after the date of plaintiff's application.

REQUEST FOR ADMISSION NO. 4: By letter of September 2, 1992, Parkwood resubmitted its August 3, 1992 prepayment package.

RESPONSE NO. 4: Plaintiff objects to this request to the extent the phrase "prepayment package" is vague and ambiguous. Without waiving this objection, plaintiff admits that on September 2, 1992, plaintiff resubmitted an application for purposes of obtaining an equity loan incentive offer from defendant. Plaintiff denies that it resubmitted its application for purposes of prepaying its March 22, 1978 loan.

REQUEST FOR ADMISSION NO. 5: The document attached as Exhibit 2 (bearing bates stamp number PATT 0001026) is a true and correct copy of Parkwood's September 2, 1992 letter referenced in Admission No. 4.

RESPONSE NO. 5: Plaintiff incorporates its objection to Request for Admission No. 4. Without waiving said objection, this request is admitted.

REQUEST FOR ADMISSION NO. 6: Parkwood resubmitted its August 3, 1992 prepayment package for the reason stated in its September 2, 1992 letter, referenced in Admission No. 4.

RESPONSE NO. 6: Plaintiff objects to this request to the extent the phrase "for the reason stated in its September 2, 1992 letter" is vague and ambiguous. Without waiving this objection, see Response No. 4.

REQUEST FOR ADMISSION NO. 7: As of February 3, 1993, Parkwood had not withdrawn the prepayment request referenced in the preceding Admissions.

RESPONSE NO. 7: Denied. Prior to May 29, 2003, plaintiff never made a request to prepay its March 22, 1978 loan. As stated previously, plaintiffs intent in filing its August 3, 1992 and September 2, 1992 applications were to obtain an equity loan incentive offer

from the defendant. To obtain such equity loan incentive offer, the defendant's then existing statutes and regulations required plaintiff to submit an application in the format contained in documents Bates numbered PATT 0001028 -1046.

REQUEST FOR ADMISSION NO. 8: As of February 3, 1993, the FmHA had not granted the prepayment request referenced in the preceding Admissions, nor had the FmHA otherwise permitted Parkwood to prepay the March 22, 1978 loan.

RESPONSE NO. 8: Denied. Plaintiff never made a request to prepay its loan until May 29, 2003. Therefore, it is plaintiff's position that until May 29, 2003, there was no prepayment request for the defendant to deny.

REQUEST FOR ADMISSION NO. 9: The FmHA never granted the prepayment request referenced in the preceding Admissions, nor did the FmHA otherwise permit Parkwood to prepay the March 22, 1978 loan upon the terms stated in that request.

RESPONSE NO. 9: Denied. See Response No. 8.

REQUEST FOR ADMISSION NO. 10: As of February 3, 1993, Parkwood knew that the FmHA would not grant the prepayment request referenced in the preceding Admissions or otherwise permit Parkwood to prepay the March 22, 1978 loan upon the terms stated in that request.

RESPONSE NO. 10: Denied. See Response No. 8.

Respectfully submitted this 16th day of July, 2008.

By______________________

C. Clayton Gill
Attorneys for Plaintiff
MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
ccg@moffatt.com
23247.0000

STATE OF WASHINGTON )
) ss.
County of Chelan )

**R. F. TAPLETT**, being duly sworn, deposes and says:

He is the **MANAGER OF DIANA ARMS MANAGEMENT COMPANY, LLC,** the general partner of **PARKWOOD ASSOCIATES LIMITED PARTNERSHIP**, the limited partnership named in the above-entitled proceeding and is authorized to make this verification in its behalf.

He has read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR ADMISSION**, knows the contents thereof, and the same are true to the best of his knowledge, information, and belief.

R. F. Taplett

SUBSCRIBED AND SWORN to before me this 15 day of July, 2008.

NOTARY PUBLIC FOR Washington
Residing at Wenatchee
My Commission Expires 12/13/11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July, 2008, I caused a true and correct copy of the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR ADMISSION** to be served by the method indicated below, and addressed to the following:

Shalom Brilliant
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
UNITED STATES DEPARTMENT OF JUSTICE
1100 L St., N.W., Room 7036
Attn: Classification Unit, 8th Fl.
Washington, D.C. 20530
Facsimile (202) 305-7643

( ) U.S. Mail, Postage Prepaid
( ) Hand Delivered
(✓) Overnight Mail
( ) Facsimile

C. Clayton Gill