# In the United States Court of Federal Claims

No. 07-742C

(Filed: April 8, 2011)

_____

| | |
|---|---|
| PARKWOOD ASSOCIATES LIMITED PARTNERSHIP, a Washington Limited Partnership,<br><br>                      Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>                      Defendant. | *   Government contract case; Cross-motions<br>*   for summary judgment; Federal Housing Act<br>*   – prepayment of housing loans; 28 U.S.C. §<br>*   1491 – Tucker Act; 28 U.S.C. § 2501 – six-<br>*   year statute of limitations; ELIHPA;<br>*   Contract breach claim; Accrual; *Franconia*;<br>*   Repudiation; Request for prepayment;<br>*   Breach when performance due; *Tamerlane*;<br>*   Subjective intent; Continuing claims<br>*   doctrine; Multiple requests for single<br>*   performance; Contract claim untimely;<br>*   Takings claim; Accrual; Takings claim<br>*   untimely.<br>* |

_____

**OPINION**

_____

*Charles C. Gill,* Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, ID, for plaintiff.

*Shalom Brilliant*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA, Judge:**

       This action, which is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment, has its genesis in a loan agreement between Parkwood Associates Limited Partnership (plaintiff) and the Farmers Home Administration (FmHA) to establish low income rural housing projects pursuant to section 515 of the Federal Housing Act. This agreement permitted prepayment of the mortgage balance at any time. In 1987, Congress enacted a statute that repudiated this prepayment provision. Notwithstanding, in 1992, plaintiff twice requested that it be allowed to prepay its loan. The FmHA essentially did not respond to these requests and plaintiff allowed the matter to drop. In 2003, plaintiff again sought to prepay its loan. This time the FmHA eventually permitted it to do so, but only after plaintiff agreed to limit its future rent charges under a new extended agreement.

In 2007, plaintiff sued, claiming that the conditions imposed upon its prepayment breached its original loan agreement or, alternatively, effectuated a takings.

Defendant argues that this complaint is untimely, asserting that, under the statute of limitations provisions of 28 U.S.C. § 2501, plaintiff's claims accrued in 1992, the year plaintiff first made its prepayment requests. Not so, plaintiff responds in its cross-motion, asserting that not only is its complaint timely, but that it is entitled to a finding, as a matter of law, that defendant is liable. As will be seen, binding precedent dictates a ruling in defendant's favor.

## I. BACKGROUND

While this case has a long history, only a few facts are needed to provide the necessary context for this motion.

On March 22, 1978, plaintiff entered into a loan contract with the FmHA, pursuant to sections 515 and 521 of the National Housing Act of 1949, as amended, 42 U.S.C. § 1485 (the 515 Program), to build the Parkwood Apartments (Parkwood) in Burlington, Washington. Under the 515 Program, the FmHA made loans to private entities to develop or construct rural housing for elderly and low-income tenants.[1] To receive a loan under the 515 Program, a borrower was required, *inter alia*, to execute a loan agreement, a promissory note, and a mortgage or deed of trust. FmHA loaned plaintiff $567,900 at an interest rate of 8.25 percent, to be paid over a period of fifty years. The promissory note executed by plaintiff contained the following provision: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower." Under the relevant FmHA regulations, to exercise this prepayment option, the borrower was obliged to submit a comprehensive set of documents at least 180 days in advance of the anticipated prepayment date. *See* 7 C.F.R. § 1965.90(a)(2)(i) (1988).

Over time, the number of 515 Program borrowers prepaying their mortgages outpaced the number of new entrants into the program, causing the supply of low-income rural housing to dwindle. In 1988, Congress enacted the Emergency Low Income Housing Preservation Act (ELIPHA), Pub. L. No. 100-242, 101 Stat. 1877 (codified at 42 U.S.C. § 1472), which restricted the prepayment of section 515 mortgages that were entered before December 21, 1979. "Before accepting any offer to prepay" such mortgages, FmHA was required to "make reasonable efforts to enter into an agreement with the borrower under which the borrower will make a binding commitment to extend the low income use of the assisted housing." 42 U.S.C. § 1472(c)(4)(A). FmHA was authorized to offer various incentives such as additional rental assistance, an increase in returns to the owner, and equity loans. 42 U.S.C. § 1472(c)(4)(B); *see also Franconia*, 61 Fed. Cl. at 723.

---

[1] For a more extensive description of the 515 Program, *see Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 722-24 (2004).

On August 3, 1992, plaintiff sent defendant a group of documents together with a letter entitled "PREPAYMENT PACKAGE." The letter stated that the submission "represents [plaintiff's] formal request to prepay Parkwood Associates, RRH #515 Plan II RA loan on February 3, 1993," and contained "a completed prepayment request . . . for [FmHA's] review and approval." This prepayment package appears to have included all the documentation required by the relevant regulations. In an August 27, 1992, letter, defendant explained that the processing of plaintiff's package had been delayed due to the potential unavailability of the project files and reassured plaintiff that defendant "will respond to your . . . loan prepayment applications." On September 2, 1992, plaintiff resubmitted "the pre-payment package for Parkwood Associates." Defendant did not respond to these submissions. Yet, Parkwood continued to operate under the 515 Program.

On May 29, 2003, plaintiff again applied to prepay its 515 Program loan, and on July 29, 2003, defendant notified plaintiff that it had processed the application. Pursuant to ELIPHA, on July 31, 2003, defendant sent plaintiff a letter asking whether it was amenable to receiving incentives in lieu of prepayment. After plaintiff responded positively to this letter, defendant, on November 25, 2003, offered plaintiff an equity loan and additional rental assistance if plaintiff would agree to a "restrictive use agreement" that would "obligate [plaintiff] . . . to restrict[ ] the use of the project to very-low, low, and moderate income tenants for a period of 20 years from the date the incentives are closed." On December 18, 2003, plaintiff agreed to "continue the pre-pay and accept [FmHA's] incentives."

A year and a half passed. Defendant then notified plaintiff that it lacked the appropriated funds to provide the promised loan and additional rental assistance. On August 4, 2005, plaintiff withdrew its acceptance of these incentives and renewed its demand to prepay its loan. In an October 18, 2005, letter, defendant advised that because plaintiff had rejected the incentive agreement, if "prepayment will not have an adverse effect on housing opportunities . . . but there is not an adequate supply . . . of rental housing . . . , the loan may be prepaid only if the borrower agrees to sign restrictive-use provisions, as determined by the Agency, to protect tenants at the time of prepayment." Defendant subsequently determined that "the availability of units is severely limited" and that "[h]ousing to minorities would be materially affected" by prepayment. On August 10, 2006, plaintiff signed "The Last Existing Tenant Restrictive-Use Provision and Agreement" (restrictive use agreement) as a condition to prepayment. The restrictive use agreement required plaintiff to permit tenants to continue paying rent at the existing rate and offer lease renewals at a basic rent amount approved by defendant.

On December 11, 2006, plaintiff paid the $277,164.64 balance on its 515 Program promissory note in full. On January 25, 2007, defendant executed a "Conditional Deed of Reconveyance" "subject to the restrictive use agreement," and, on February 2, 2007, defendant terminated its rent subsidy contract with plaintiff.

On October 24, 2007, plaintiff filed its complaint in this court asserting a breach of contract claim based on defendant's failure to allow prepayment and its insistence that plaintiff continue to operate Parkwood under the 515 Program restrictions without rent subsidies.

Plaintiff also alleged a takings claim, contending that the 515 Program restrictions and terminated subsidies forced it to lease units at drastically-reduced, below-market rates. On September 12, 2008, defendant filed a motion for summary judgment alleging that plaintiff's claims are time-barred by the six-year statute of limitations and that plaintiff failed to state a takings claim. On October 14, 2008, plaintiff filed its response and a cross-motion for partial summary judgment. Following the completion of briefing on these motions, on March 17, 2009, the court held oral argument. Pursuant to court order, on April 4, 2009, the parties submitted supplemental briefs. On October 7, 2009, the court stayed the case, pending settlement discussions. When those discussions proved unfruitful, on August 8, 2010, the court lifted the stay. The parties have since filed various authorities supplementing their briefs.

## II.    DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id*. at 248. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id*.; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-52; *see also Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)). Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants this court jurisdiction to render judgment on any claim against the United States founded, *inter alia*, on the Constitution or a contract. *See United States v. Testan*, 424 U.S. 392, 397-98 (1976). A claimant must bring a claim under the this provision "within six years after such claim first accrues." 28 U.S.C. § 2501; *see also Samish Indian Nation v. United States*, 419 F.3d 1355, 1369 (Fed. Cir. 2005). This is a jurisdictional limit that cannot be waived. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008). It is well-established that a claim accrues under section 2501 "when 'all events have

occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1177 (2004) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)); *see also Samish*, 419 F.3d at 1369. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998); *Entines v. United States*, 39 Fed. Cl. 673, 678 (1997), *aff'd*, 185 F.3d 881 (Fed. Cir.), *cert. denied*, 526 U.S. 1117 (1999); *see also John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).[2]

Defendant asseverates that plaintiff's breach of contract claim accrued in 1992, nearly fifteen years before this suit was filed and thus well outside the six-year limitations period provided by section 2501. Plaintiff, however, asserts that its current claim did not arise in 1992, but rather in 2003 or 2005 – the former being the year it made yet another prepayment request and the latter being the year in which the FmHA eventually granted that request, albeit with conditions that plaintiff argues breached its original loan agreement. This suit, plaintiff thus contends, is timely. The parties make similar competing claims as to the timeliness of plaintiff's alternative takings claim. The court will consider the timeliness of plaintiff's contract and takings claims *seriatim*.

### A. Breach of Contract

We start from the premise that the law of contracts between private parties generally controls the government's contractual rights and duties. *Mobil Oil Exploration & Producing S.E., Inc. v. United States*, 530 U.S. 604, 607 (2000); *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (plurality opinion). Ordinarily, a breach of contract claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964); *see also Petro-Hunt, L.L.C.*, 90 Fed. Cl. at 67. Pinpointing the date on which contract liability was fixed here requires consideration of the Supreme Court's opinion in *Franconia Associates v. United States*, 536 U.S. 129 (2001).

In *Franconia*, the Supreme Court held that "ELIHPA's enactment . . . qualified as a repudiation of the parties' bargain, not a present breach of the loan agreements." 536 U.S. at 133. The Court found that ELIHPA "conveyed an announcement by the Government that it

---

[2] *See also Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) ("Although ordinarily the defendant bears the burden of proving an affirmative statute of limitations defense, here the statute of limitations is jurisdictional, and, '[w]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" (quoting *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001))); *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 58 (2009).

would not perform as represented in the promissory notes if and when, at some point in the future, petitioners attempted to prepay their mortgages." *Id*. at 143. Relying upon the Restatement (Second) of Contracts § 250 and other contract treatises, the Court noted that the time of accrual varied depending upon "whether the injured party chooses to treat the . . . repudiation as a present breach." *Id*. at 144 (quoting 1 C. Corman, Limitations of Actions § 7.21, p.488 (1991)). The Court thereby concluded that if a property owner elected to place the United States, as a repudiator, in breach before the performance date, the accrual date for its cause of action would be the date of that election; if the property owner opted to await performance, its cause action would accrue as of the time fixed for performance. *Id*.[3] *Franconia* thus provided plaintiffs with mortgage contracts adversely impacted by ELIHPA's enactment two bites at the apple: an injured party could elect to sue immediately by treating the anticipatory repudiation effectuated by ELIHPA as a breach, or could wait and file suit when performance was due, but not rendered.

Plaintiff, however, seeks a third bite at that apple. It claims that its 1992 requests did not trigger the statute of limitations because they were not really requests to prepay, but rather *pro forma* steps to obtain an equity loan – one of the ELIHPA incentives that the FmHA offered to those property owners requesting prepayment. It further asseverates that the 1992 requests did not give rise to a breach because plaintiff never pursued the actual prepayment of its loan – it did not tender payment, but dropped the matter once the agency failed to respond. In plaintiff's view, then, these earlier events did not prevent it from pursuing another prepayment request in 2003 – this time, a real one – and from filing this lawsuit once that request was not honored unconditionally.

Plaintiff's arguments strongly resemble those that recently were considered – and rejected – by the Federal Circuit in *Tamerlane, Ltd. v. United States*, 550 F.3d 1135 (Fed. Cir. 2008), *cert. denied*, *sub nom.*, *Mullica West, Ltd. v. United States*, 129 S. Ct. 2827 (2009), a case very closely on point. Like the Parkwood owners here, the plaintiffs in *Tamerlane* owned housing developments acquired using FmHA loans. 550 F.3d at 1137. And the contracts evidencing those loans provided the property owners with the right to prepay at any time. *Id*.

---

[3] In this regard, the Supreme Court elaborated further –

In sum, once it is understood that ELIHPA is most sensibly characterized as a repudiation, the decisions below lose force. . . . If [the injured] party "[e]lects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from [the] time of performance to the date of such election." *Id.* at 488-489. But if the injured party instead opts to await performance, "the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation." *Id.* at 488.

536 U.S. at 144; *see also Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed. Cir. 2005) ("For an aggrieved party to recover damages for an anticipatory repudiation, it must elect to treat the repudiation as a total breach."); *Arakaki v. United States*, 62 Fed. Cl. 244, 254 (2004).

After ELIHPA was passed, the property owners, in 1988 and 1992, sent the FmHA letters requesting to pay off the balance of their loans.  *Id*. at 1138-39.  The FmHA, however, did not accept the prepayment offers, but instead offered the owners incentive loans authorized by ELIHPA.  *Id*. at 1139.  In 2005, the property owners filed suit in this court seeking damages for breach of contract on the basis that ELIHPA violated the express terms of their original loan agreements.  *Id*.

This court ruled that these claims were barred by the six-year statute of limitations of section 2501.  It held that the claims first accrued in 1991 and 1992, when the FmHA rejected the owners' requests to prepay their loans and, instead, offered incentive loans.  *See Tamerlane, Ltd. v. United States*, 76 Fed. Cl. 512 (2007).  In a later decision, this court held that the property owners could not assert a second breach of the contract based on a later prepayment request.  *Tamerlane, Ltd. v. United States*, 80 Fed. Cl. 724 (2008).  On this count, this court reasoned that "[a]ny subsequent or continuing denial by the Government of responding to plaintiffs' rights to prepay their loans and exit the program pursuant to ELIHPA does not give rise to a new cause of action, but flows from the Government's original repudiation and later breach occurring in 1993 and 1991."  *Id*. at 737.  The court found that these later claims – referred to as those arising under the so-called "extended period" – were also barred by the six-year statute of limitations.  *Id*.; *see also Tamerlane, Ltd. v. United States*, 81 Fed. Cl. 511 (2008) (denying a motion to amend the judgment as to these extended period claims).

On appeal, the Federal Circuit affirmed.  It observed that *Franconia* teaches that the "'time of accrual [of a claim] depends on whether the injured party chooses to treat the repudiation as a present breach.'"  550 F.3d at 1142 (quoting *Franconia*, 536 U.S. at 144).  It further noted that the Supreme Court had explained that the statute of limitations begins to run "'when a borrower tenders prepayment and the [g]overnment then dishonors its obligation to accept the tender.'"  550 F.3d at 1142 (quoting *Franconia*, 536 U.S. at 144).  Rejecting the appellants' argument that their request to prepay did not constitute "tender" of payment, as contemplated by the Supreme Court, the Federal Circuit held that a "highly formalized and technical process" of payment is not needed to trigger a breach.  *Id*.  Specifically, it found that *Franconia* does not require a "physical transfer of money must be attempted in order to constitute a tender of payment."  *Id*. at 1143.  By way of further explanation, it added –

> The degree of formalism in communications for which Appellants advocate is unnecessary given Congress' clear repudiation of the unfettered right to prepay in ELIPHA.  When the government responded to Appellants' requests to prepay with offers of incentive loans, those offers were functionally co-extensive with a rejection of prepayment.  The *Franconia* decision requires no more formalism than the written request to prepay followed by non-acceptance of the request by the government to trigger the running to the statute of limitations.

550 F.3d at 1143.  Based on this analysis, the Federal Circuit held that this court had "correctly ruled that at least by 1991 and 1992, . . . breach-triggering rejections had occurred."  *Id*.; *see*

*also City Line Joint Venture v. United States*, 82 Fed. Cl. 312, 315 (2008) (adopting a similar construction of the *Franconia* case).

In reaching this conclusion, the Federal Circuit made several additional points that bear special mention. First, the court flatly disagreed with the notion that the FmHA did not actually reject the property owners' offers of prepayment by offering ELIHPA incentive loans in response to their requests to prepay. Observing that *Franconia* did not define the "contours of the tender and rejection" that would trigger the statute of limitations, it instead determined that the "*Franconia* decision requires no more formalism than the written request to prepay followed by non-acceptance of the request by the government to trigger the running to the statute of limitations." 550 F.3d at 1143. Because the FmHA's rejection qualified as a breach of the original loan agreements, the court concluded that the six-year limitations period was triggered when the owners' claims accrued in the early 1990s. Second, the Federal Circuit made short shrift of the argument that the prepayment letters "were just part of a mechanical process to get incentives, and were never intended to declare the government in breach of the underlying loan agreements." *Id*. at 1144. It noted that this argument "appears to rely on the subjective intent of the parties with respect to whether there was a 'tender'" – a *non sequitur* because "the determination of performance or breach of contract" is not based on subjective intent. *Id*. at 1144 n.15. Finally, the Federal Circuit cast aside the argument that a "second opportunity for breach of the original agreements" would arise once the twenty-year use restrictions under the ELIHPA incentive loans expired. *Id.* at 1146. Rejecting application of the so-called "continuing claims" doctrine, the court held instead that "there is no second opportunity for breach of the original agreements" because "there was a single agreement that was breached on a single occasion." *Id*. at 1146.[4]

*Tamerlane* thus flatly rejects plaintiff's banner claims here – that the earlier prepayment requests did not trigger the statute of limitations because they were intended only to facilitate the receipt of equity loans, and that, at all events, plaintiff could make another request for prepayment and sue upon the agency's failure to grant that request unconditionally. As to the

---

[4]  On this point, the Federal Circuit added –

This situation is analogous to that in *Ariadne*, where we were confronted with a plaintiff who sought compensation from the government for repudiation of a contract that promised continuing performance into the future. 133 F.3d [874, 879 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 823 (1998)]. In finding that a single statutory repudiation made clear the government's intent to reject the terms of the contracts, we held that each subsequent denial of the promised contractual benefits did not give rise to a separate cause of action, and found that the continuing claims doctrine did not permit the plaintiff to obtain a second limitations period where the limitations period on the original breach had already expired. *Id*.

550 F.3d at 1146 n.17; *see also Tamerlane, Ltd.*, 80 Fed. Cl. at 737.

former point, it is well-established that a breach arises when an obligated party fails to render performance when due. *See* Restatement (Second) of Contracts § 235(2) ("When performance of a duty under a contract is due any non-performance is a breach."); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). If that performance is subject to a condition, performance is due once the condition is triggered. *See* Restatement (Second) §§ 224 cmt. d, 225 (discussing conditions). For this purpose, it matters not why a party triggers that condition – all that is relevant, for breach analysis, is that, upon the condition occurring, performance is due. If that obligation arises and performance is not rendered, a breach claim accrues and the statute of limitations begins to run. *See Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 596-97 (2001) (describing a breach of contract as a "simple failure to perform"); 1 Richard A. Lord, Williston on Contracts § 4:1 (4th ed. 2007); Restatement (Second) of Contracts § 235 cmt. b. Consistent with the objective theory of contract enforcement, the undisclosed subjective intent of the parties thus plays no role in this analysis, as *Tamerline* definitively holds.[5]

      Nor, as *Tamerlane* further establishes, can a plaintiff avoid the harsh sting of a statute of limitations by the simple expediency of making another request for the same performance. The continuing claims doctrine, in particular, does not allow that. That doctrine, rather, is invoked properly only where a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997); *see also Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d at 879; *Petro-Hunt, L.L.C.*, 90 Fed. Cl. at 64 n.12. The performance at issue, by comparison, cannot be subdivided – under the FmHA loan contract, the mortgagee can prepay the entire mortgage only once and the mortgagor, under the loan contract, is obliged to accept that prepayment unconditionally. FmHA's failure to do the latter led to a breach in 1993 (when performance was due), and did not give rise to yet another breach when plaintiff reinitiated the prepayment process in 2003. That conclusion springs not only from *Tamerlane*, but from various other cases holding that subsequent claims are not timely under the continuing claims doctrine where a plaintiff makes

---

[5] *See Navair, Inc. v. IFR Ams., Inc.*, 519 F.3d 1131, 1138-39 (10th Cir. 2008); *In re Johns-Manville Corp.*, 440 B.R. 604, 614 (Bankr. S.D.N.Y. 2010) (subjective intent irrelevant in determining whether contract condition triggered); *Golkow v. Esquire Deposition Servs., L.L.C.*, 2010 WL 2853028, at *3 (E.D. Pa. July 15, 2010) ("Breach of contract actions involve objective factors, such as terms, duties, performance, and damages, whereas claims for punitive damages involve evaluation of subjective intent."); *WaveDivision Holding, LLC v. Millennium Digital Media Sys. L.L.C.*, 2010 WL 3706624, at *14 (Del. Ch. Sept. 17, 2010) (subjective intent irrelevant in determining breach); *Chamberlin v. Puckett Constr.*, 921 P.2d 1237, 1241 (Mont. 1996) ("In determining whether an anticipatory breach was committed, courts are [not] concerned with . . . the promisor's uncommunicated subjective intent in repudiating its contractual obligations."); *see also* Restatement (Second) of Contracts § 20(2)(b).

multiple requests for an agency to perform the same, indivisible task under a contract.[6] These cases illustrate that a contracting party cannot subdivide a single breach claim, so as to treat a "later" portion as being timely-filed.[7]

Undaunted, plaintiff suggests that *Tamerlane* is inapposite because there the FmHA denied the prepayment requests, whereas here plaintiff's 1992 requests ultimately were met with silence. But, this is a distinction without a difference.

There is little doubt that the agency's failure to grant the 1992 requests constituted a breach, particularly because plaintiff specified a date for performance, *i.e.*, February 3, 1993. The latter fact, if nothing else, distinguishes this case from *Kasarsky v. Merit Sys. Protection Bd.*, 296 F.3d 1331 (Fed. Cir. 2002), which plaintiff claims supports the proposition that a mere failure to respond to a demand for performance does not constitute a breach. In *Kasarsky*, the Federal Circuit held that defendant's failure to answer a demand for payment under a settlement agreement did not constitute a breach because a date for performance was not specified and, as well, there was "no evidence of record to suggest that the agency did not fully intend to comply with the terms of the agreement." *Id*. at 1336. The court clearly signaled that a different result would obtain in a case such as this, stating that "[w]hen no time for performance is specified and one party performs, the non-performing party is not in breach of the contract until . . . the performing party demands performance within a reasonable amount of time, and the other party still fails to perform within the time specified." *Id.* The circumstances described in this passage – in which performance was demanded – is, of course, exactly what happened here. Plaintiff indicated that it wanted to prepay by February 3, 1993. The FmHA silence did not excuse or forestall its breach – it *was* the breach as it constituted nonperformance in the face of a contractual duty. *See City Line Joint Venture*, 82 Fed. Cl. at 315-16 (HUD failure to respond to prepayment request effectuated a breach); *cf. Grass Valley Terrace v. United States*, 69 Fed. Cl.

---

[6] *See*, *e.g., Brown Park Estates-Fairfield Dev. Co.*, 127 F.3d at 1457-59 (contractual claim accrued when Department of Housing and Urban Development (HUD) failed to make the first rent adjustment and a new claim did not accrue upon the failure to make further adjustments); *Harvest Inst. Freedman Fed'n v. United States*, 80 Fed. Cl. 197, 199-200 (2008) (rejecting application of continuing claims doctrine based on single breach of tribal treaty, noting that "[t]here must have been multiple events for the doctrine to apply"); *see also Carrington Gardens Assocs. v. United States*, 49 Fed. Appx. 427, 430-31 (4th Cir. 2002) (where HUD determined loan in default, subsequent requests to reconsider default determination did not initiate new limitations period).

[7] There is little to distinguish this case from those in which parties have sought to pursue separate claims for the annual, recurring damages attributable to a single breach. In the latter instance, the Federal Circuit has repeatedly held that the "continuing claim doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time." *Ariadne Fin. Servs. Pty. Ltd.*, 133 F.3d at 879; *see also Brown Park*, 127 F.3d at 1457. Logic suggests that this rule ought not be circumvented simply by having the injured party annually request the same performance previously denied.

341, 354-55 (2005) (holding that property owner's breach claim did not accrue when FmHA letter did not reject or deny prepayment request, but merely required further documentation).[8]

Accordingly, based on the foregoing, the court finds that plaintiff's contract claim is not timely under the six-year statute of limitations provided by section 2501. The court turns next to plaintiff's takings claim.

### B.     Takings

The Fifth Amendment provides that private property shall not "be taken for public use without just compensation." U.S. Const. Amend. V. A claim alleging a Fifth Amendment taking "'accrues when that taking action occurs.'" *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (quoting *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994)). Apart from a condemnation, such a taking generally occurs when the government deprives an owner of the use and enjoyment of his or her property. *See United States v. Causby*, 328 U.S. 256, 261-62 (1946); *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945); *see also Boling v. United States*, 220 F.3d 1365, 1371 (Fed. Cir. 2000). A permanent takings claim arises when: (i) all the events which fix the government's liability have occurred; and (ii) the plaintiff knew or should have known of the existence of these events. *See Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir.), *cert. denied*, 130 S.Ct. 271 (2009); *Alliance of Descendants of Tex. Land Grants*, 37 F.3d at 1481; *Petro-Hunt, L.L.C.*, 90 Fed. Cl. at 59.

Applying these standards, plaintiff's takings claim arose, at the latest, at the same time as its contract claim, that is, when the agency failed to honor its 1992 prepayment requests. *See*

---

[8] The court has considered another possibility hinted at by plaintiff in its briefs – that plaintiff's failure to sue on the FmHA nonperformance in 1992 waived defendant's breach and thereby prevented the statute of limitations from ever being triggered. Surely, under the law, plaintiff was within its rights not to pursue defendant's breach and continue to perform its end of the contract. By doing so, it waived any claims to a material breach that might have given it the right to cancel the contract. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1383 (Fed. Cir. 2004). But, even so, plaintiff retained a partial breach claim, which, as it accrued, triggered the six-year statute of limitations. *See Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313 (Ct. Cl. 1976) (discussing this partial breach concept); *see also Roehm v. Horst*, 178 U.S. 1, 9-10 (1900). Perhaps before the February 3, 1993, due date it previously specified, plaintiff could have waived the performance owed by the FmHA, preventing the loan contract from being breached. But, it did not do so, and any waiver thereafter would not discharge defendant's duty to compensate plaintiff for a partial breach and prevent the statute of limitations from being triggered. *See Deloro Smelting & Ref. Co. v. United States*, 317 F.2d 382, 385 (Ct. Cl. 1963); 8 Catherine M.A. McCauliff, Corbin on Contracts § 40.16 (2007) ("When a party has failed . . . to render . . . performance on time, that party has committed a breach of contract. The other party's waiver of the condition of prompt performance does not discharge the right to damages for the first breach, . . .").

*Henry Housing Ltd. P'ship. v. United States*, 95 Fed. Cl. 250, 256-57 (2010) (holding, in an analogous setting, that the takings claim accrued as "of FmHA's refusal to allow Henry Housing to prepay its loan"); *Tamerlane*, 80 Fed. Cl. at 738 (same); *Royal Manor, Ltd. v. United States*, 69 Fed. Cl. 58, 63 (2005) (same). This leaves plaintiff with the same statute of limitations problem it encountered with its contract claim. Hence, at the latest, plaintiff's takings claim accrued in 1993 and thus more than six years prior to the 2007 filing of this lawsuit. Accordingly, plaintiff's takings claim must also be dismissed as time-barred under section 2501.

### III.   CONCLUSION

It is safe to say that some things in life ought not be feigned. "Do not feign affection," a famous poem admonishes.[9] Nor should an official invoke "feigned necessities," characterized by Cromwell as "the greatest cozenage that men can put upon the Providence of God, and make pretence to break known rules by."[10] And when it comes to contracts, one probably should add to this list – not feigning a demand for performance. Doing so when performance is not truly desired, and when there is no genuine intent to pursue damages upon nonfeasance, is a pretense that, over time, can serve to render important rights unenforceable – as this case, unfortunately for plaintiff, so well illustrates.

For the foregoing reasons, the court holds that plaintiff's claims are time-barred. As a result, the court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiff's cross-motion for partial summary judgment. The Clerk is hereby ordered to dismiss plaintiff's complaint. No costs.

**IT IS SO ORDERED**.

> s/ Francis M. Allegra
> Francis M. Allegra
> Judge

---

[9]   Max Ehrmann, Desiderata (1927).

[10]   Oliver Cromwell, Speech to Parliament, September 12, 1654.